# In the United States Court of Appeals for the Fifth Circuit

MELISSA ELIZABETH LUCIO,

*Petitioner-Appellant,*

*v.*

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division

## SUPPLEMENTAL EN BANC BRIEF FOR APPELLEE

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General
Matthew.Frederick@oag.texas.gov

ARI CUENIN
Assistant Solicitor General
Ari.Cuenin@oag.texas.gov

Counsel for Appellee

# CERTIFICATE OF INTERESTED PERSONS

No. 16-70027

MELISSA ELIZABETH LUCIO,

*Petitioner – Appellant,*

*v.*

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent – Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK
*Counsel of Record for Respondent-Appellee*

## Statement Regarding Oral Argument

The Court has tentatively calendared en banc oral argument in this case for the week of May 18, 2020.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................... i

Statement Regarding Oral Argument ....................................................... ii

Table of Authorities ................................................................................ iv

Introduction ............................................................................................. 1

Issues Presented ....................................................................................... 2

Statement of the Case .............................................................................. 3

    I.    Factual Background ..................................................................... 3

    II.   Capital Murder Trial .................................................................... 4

        A.   Guilt-Innocence Phase ........................................................ 4

        B.   Punishment Phase ................................................................ 7

    III. Direct Appeal ................................................................................ 8

    IV. State Habeas Review .................................................................... 9

    V.   Federal Habeas Petition .............................................................. 10

Summary of the Argument ...................................................................... 13

Argument ............................................................................................... 14

    I.    Lucio's Claim Was Adjudicated on the Merits in State Court. ............... 14

        A.   The complete-defense claim presented in Lucio's state habeas application was adjudicated on the merits. ............................ 15

        B.   If the state court did not adjudicate a federal claim on the merits, it follows that Lucio's claim is not cognizable in federal habeas. ................................................................... 18

        C.   If Lucio presses a different claim, that claim is unexhausted. ............ 20

    II.   Lucio Cannot Overcome AEDPA's Relitigation Bar. ............................... 24

        A.   The state court's decision is not contrary to clearly established federal law. ....................................................... 26

        B.   The state court's judgment did not involve an unreasonable application of clearly established law. ...................................... 33

        C.   The state court's judgment was not based on an unreasonable determination of facts. ....................................................... 34

III. Lucio Cannot Secure Federal Habeas Relief Even if AEDPA Does Not Bar Relitigation of Her Claim. .................................................. 36

    A. Lucio's complete-defense claim is barred under *Teague v. Lane*. ................................................................................................ 37

    B. Lucio's complete-defense claim fails on de novo review. ................. 39

Conclusion ................................................................................................ 47

Certificate of Service ............................................................................... 48

Certificate of Compliance ........................................................................ 48

## Table of Authorities

Page(s)

**Cases:**

*Ashe v. Swenson,*
   397 U.S. 436 (1970) ..................................................................... 28

*Bailey v. Procunier,*
   744 F.2d 1166 (5th Cir. 1984) ....................................................... 12

*Berghuis v. Thompkins,*
   560 U.S. 370 (2010) ..................................................................... 36

*Blue v. Thaler,*
   665 F.3d 647 (5th Cir. 2011) .................................................... 35, 36

*Boyer v. Vannoy,*
   863 F.3d 428 (5th Cir. 2017) ......................................................... 43

*Brecht v. Abrahamson,*
   507 U.S. 619 (1993) ................................................................. 45, 46

*Brumfield v. Cain,*
   135 S. Ct. 2269 (2015) .................................................................. 36

*Byrd v. Workman,*
   645 F.3d 1159 (10th Cir. 2011) ..................................................... 36

*California v. Trombetta*,
467 U.S. 479 (1984) ................................................... 10

*Carey v. Musladin*,
549 U.S. 70 (2006) .....................................25, 28, 29

*Chambers v. Mississippi*,
410 U.S. 284 (1973) ...........................................*passim*

*Crane v. Kentucky*,
476 U.S. 683 (1986) ...........................................*passim*

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993) ..................................................... 5

*E.I. du Pont de Nemours Co. v. Robinson*,
923 S.W.2d 549 (Tex. 1995) ............................... 44-45

*Early v. Packer*,
537 U.S. 3 (2002) (per curiam) ............................... 18

*Escamilla v. Stephens*,
749 F.3d 380 (5th Cir. 2014)................................... 23

*Estelle v. McGuire*,
502 U.S. 62 (1991) ....................................................19

*Estelle v. Williams*,
425 U.S. 501 (1976) ................................................ 28

*Evans v. Davis*,
875 F.3d 210 (5th Cir. 2017) ................................. 26

*Goeke v. Branch*,
514 U.S. 115 (1995) (per curiam), ...........................37, 39

*Green v. Georgia*,
442 U.S. 95 (1979) (per curiam) ...........................20, 31

*Harrington v. Richter*,
562 U.S. 86 (2011) ........................................ 24, 25, 26, 33

*Holmes v. South Carolina,*
    547 U.S. 319 (2006) ............................................................10, 11, 18

*Horn v. Banks,*
    536 U.S. 266 (2002) (per curiam) ......................................... 37

*Johnson v. Williams,*
    568 U.S. 289 (2013) .............................................................16

*Kaps v. State,*
    1998 WL 209060 (Tex. App.—Dallas, 1998, no pet.) ..............................21, 22

*Knowles v. Mirzayance,*
    556 U.S. 111 (2009) .............................................................33, 34

*Lambrix v. Singletary,*
    520 U.S. 518 (1997) ............................................................. 38

*Landano v. Rafferty,*
    897 F.2d 661 (3d Cir. 1990) ......................................... 23

*Langley v. Prince,*
    926 F.3d 145 (5th Cir. 2019) (en banc) ...................................*passim*

*Lewis v. Jeffers,*
    497 U.S. 764 (1990) .............................................................19

*Lucio v. Davis,*
    947 F.3d 331 (5th Cir. 2019) (per curiam) ......................... 12

*Lucio v. Davis,*
    783 F. App'x 313 (5th Cir. 2019) (per curiam) ................. 12

*Lucio v. Davis,*
    751 F. App'x 484 (5th Cir. 2018) (per curiam) ................. 12

*Lucio v. State,*
    351 S.W.3d 878 (Tex. Crim. App. 2011) ......................... 8, 9

*Lucio v. Texas,*
    132 S. Ct. 2712 (2012) ......................................................... 8, 9

*Mitchell v. Esparza,*
    540 U.S. 12 (2003) (per curiam) .................................................17

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015) (per curiam) ........................................ 28

*Nevada v. Jackson,*
    569 U.S. 505 (2013) (per curiam) ........................................ 33

*O'Quinn v. Spiller,*
    806 F.3d 974 (7th Cir. 2015) ................................................. 35

*Potier v. State,*
    68 S.W.3d 657 (Tex. Crim. App. 2002) (en banc) ........................ 23

*Rock v. Arkansas,*
    483 U.S. 44 (1987) ..........................................8, 10, 11, 40, 41

*Sexton v. Beaudreaux,*
    138 S. Ct. 2555 (2018) (per curiam) .................................... 23

*Stone v. Powell,*
    428 U.S. 465 (1979) ............................................................... 18

*Teague v. Lane,*
    489 U.S. 288 (1989) ..........................................11, 36-37, 38

*Thompson v. Thaler,*
    432 F. App'x 376 (5th Cir. 2011) ........................................ 35

*Torres v.* State,
    71 S.W.3d 758 (Tex. Crim. App. 2002) ..........................15, 23

*Tyler v. Cain,*
    533 U.S. 656 (2001) ............................................................... 38

*United States v. Addonizio,*
    442 U.S. 178 (1979) ............................................................... 18

*United States v. Cohen,*
    510 F.3d 1114 (9th Cir. 2007) ........................................ 20-21

*United States v. Hall,*
  93 F.3d 1337 (7th Cir. 1996) ................................................20, 21, 45

*United States v. Scheffer,*
  523 U.S. 303 (1998) ....................................................................*passim*

*Vasquez v. Hillery,*
  474 U.S. 254 (1986) ............................................................................ 23

*Washington v. Texas,*
  388 U.S. 14 (1967) ............................................................... 10, 11, 42

*Wiley v. State,*
  74 S.W.3d 399 (Tex. Crim. App. 2002) ........................................ 23

*Williams v. Taylor,*
  529 U.S. 362 (2000) ................................................................... 25, 30

*White v. Woodall,*
  572 U.S. 415 (2014) .................................................... 26, 29, 33, 34

*Wilson v. Sellers,*
  138 S. Ct. 1188 (2018) ......................................................................17

*Woodford v. Viscotti,*
  537 U.S. 19 (2002) (per curiam) .................................................17

*Woods v. Donald,*
  575 U.S. 312 (2015) .......................................................................... 29

*Yarborough v. Alvarado,*
  541 U.S. 652 (2004) ................................................................. 26, 34

**Statutes:**

28 U.S.C.
    § 2241(c)(3) ................................................................................... 18
    § 2254(a) ................................................................................... 18, 37
    § 2254(b)(1)(A) ................................................................................ 23
    § 2254(d) ......................................................................... 14, 24, 33
    § 2254(d)(1) ...................................................................... 25, 34
    § 2254(d)(2) ...................................................................... 34, 35
    § 2254(e)(1) ................................................................. 25, 34, 35

Tex. Code. Crim. Pro. art. 2.32(b) ....................................................... 2, 37

**Other Authorities:**

Fed. R. Evid. 702 ...................................................................... 42, 44

Fed. R. Evid. 802 .......................................................................... 42

Fed. R. Evid. 901 .......................................................................... 42

Tex. R. Evid. 103(a)(2) ..................................................................... 6

Tex. R. Evid. 702 .......................................................................... 44

# Introduction

In her state habeas application, Petitioner Melissa Lucio claimed that the trial court violated her constitutional right to a complete defense by excluding expert testimony intended to undermine the credibility of her own statements. That claim was rejected by the Court of Criminal Appeals (CCA). Lucio nevertheless maintains that she is entitled to de novo review and federal habeas relief. She is entitled to neither.

AEDPA bars relitigation of Lucio's claim because it was adjudicated on the merits in state court. Lucio cannot dispute that the CCA rejected her claim, and she concedes that it did not rely on procedural grounds. That was an adjudication of Lucio's complete-defense claim on the merits.

Lucio tries to move the goalposts—and avoid the relitigation bar—by arguing that the state court failed to address the merits of her constitutional claim at all. That argument is mistaken and futile. Lucio did not bring parallel state and federal claims, and she did not offer an alternative state-law ground for relief. The state court rejected the only complete-defense claim that Lucio raised, and it responded directly to the only argument she made to support it. If that does not qualify as an adjudication of Lucio's federal complete-defense claim on the merits, it could only be because Lucio failed to present a cognizable federal claim in the first place. And if that is the case, then Lucio cannot secure relief on that claim in federal habeas proceedings.

Lucio also attempts to shift the focus of her claim, suggesting that the CCA addressed the wrong federal claim. That effort is equally futile. Lucio brought one federal claim. The CCA rejected it on the terms in which it was presented. If that claim

is different from the claim she advances now, then her claim is unexhausted, and relief is barred.

But Lucio brings the same claim that she brought in state court, and that claim inevitably fails. Lucio cannot possibly overcome AEDPA's relitigation bar because the Supreme Court has never suggested, let alone held, that the Constitution compels state courts to admit expert testimony offered to cast doubt on a defendant's own statements.

And even if Lucio could somehow set aside AEDPA's relitigation bar, she would run headlong into *Teague*. The rule Lucio advocates is undoubtedly new, and that new rule could fundamentally alter Texas criminal procedure given that Texas law requires a "contemporaneous electronic recording" of custodial interrogations related to certain crimes, including murder and capital murder. Tex. Code Crim. Pro. art. 2.32(b). But Lucio could not benefit from that rule in any event. Even if she could manage to overcome both AEDPA and *Teague*, her claim would fail on de novo review because the trial court's reasonable application of legitimate evidentiary rules to exclude unreliable expert testimony did not deprive Lucio of the right to present a complete defense.

## Issues Presented

1. Whether Lucio's claim was adjudicated on the merits in state court.

2. Whether AEDPA bars relitigation of Lucio's complete-defense claim.

3. If AEDPA does not bar relitigation of her complete-defense claim, whether Lucio can secure federal habeas relief.

## Statement of the Case

### I.  Factual Background

Lucio's two-year-old daughter Mariah was taken to the emergency room on Saturday, February 17, 2007, and pronounced dead shortly thereafter. ROA.4270-71. Lucio told first responders that Mariah had fallen down some stairs. ROA.4382. The condition of Mariah's body showed severe abuse. She was dehydrated, ROA.4271, and her body was covered with bruises, abrasions, and contusions scattered all over her back, arms, elbows, buttocks, side, and face. ROA.4273-74. There was a bite mark on her back. ROA.4273. One of Mariah's arms had been broken one to two weeks before her death. ROA.4525. Mariah was also missing hair where it had been pulled out. ROA.4509. The doctor who tried to resuscitate Mariah in the emergency room testified that this was the "absolute worst" case of child abuse that he had seen in his 30 years of practice. ROA.4279. An autopsy attributed Mariah's death to "blunt force head trauma." ROA.4517.

On the night Mariah died, Lucio signed a waiver of her *Miranda* rights, ROA.4231, and was questioned by several investigators in a videotaped interview beginning around 10:00 p.m. ROA.8101.[1] Lucio claimed that Mariah had fallen down some stairs on Thursday night. ROA.8102-03. For about three hours, Lucio denied any knowledge of how Mariah became so badly bruised and suggested that her older children could have been responsible. ROA.8101-176.

---

[1] Video of the interview was admitted as State's Exhibits 3, 4, and 5, and a transcription appears in the state habeas record at ROA.8099-231.

Texas Ranger Victor Escalon then began to interview Lucio. ROA.8177.[2] Escalon eventually asked, "Who did it?" Lucio answered, "I did." ROA.8183. Lucio admitted to spanking Mariah, ROA.8187, biting her, ROA.8209, and pinching her vagina, ROA.8205. She said that "nobody else would hit her." ROA.8189. But she denied that she ever hit Mariah in the head, ROA.8187, and she denied that she ever punched her, ROA.8227. Later in the interview, Lucio demonstrate how she bit and spanked Mariah using a doll. ROA.8221-28.

Later, while Lucio was being taken to get a dental mold, the officer transporting her allowed her to use her cell phone to call her sister. The officer observed that she appeared agitated, and he heard her say, "Don't blame Robert. This was me. I did it. So don't blame Robert." ROA.4449.

The Cameron County grand jury indicted Lucio for capital murder. ROA.7664.

## II. Capital Murder Trial

### A. Guilt-Innocence Phase

At Lucio's capital murder trial, her recorded interview was played for the jury. ROA.4254. Escalon testified that when he entered the interview room, he observed Lucio to "try to get a better idea" about her. ROA.4409. Asked to describe Lucio's demeanor, Escalon testified that "she was not making eye cont[]act with the investigator," "had her head down.," and had a "slouched appearance." ROA.4410. This led Escalon to believe that "she did something," ROA.4410, but was "hiding

---

[2] The transcript of the recorded interview sometimes identifies Escalon as "Victor Escalante." ROA.8177.

the truth." ROA.4411. The defense did not object to Escalon's testimony or to the preceding questions.[3]

The State presented the testimony of Dr. Norma Jean Farley, who performed Mariah's autopsy. ROA.4505. Dr. Farley concluded that Mariah's death resulted from "blunt force head trauma." ROA.4517. She testified that Mariah's injuries would not have been caused by falling down stairs. ROA.4528-29, ROA.4549, ROA.4553. To rebut the State's theory, the defense presented Dr. Jose Kuri, who testified that Mariah's death was consistent with blunt-force trauma suffered in a fall down stairs. ROA.4651-52.

The defense called Norma Villanueva to testify as an expert "about the body language of [Lucio] during her video statement," as well as "what's happened to [Lucio] and the authorities with Child Protective Services and how that has a bearing on Melissa Lucio." ROA.4686. Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the trial court held a hearing to determine whether Villanueva was qualified as an expert body-language interpreter. She testified that training on the interpretation of body language was "part of mental health clinical training." ROA.4693. On cross-examination, Villanueva testified that she was "not a specialist in that area." ROA.4695. Asked to identify a relevant treatise, Villanueva testified, "There are several manuals in the law enforcement field, but not in the mental health field." ROA.4695. Asked to identify specific training in the field, she referred to "my

---

[3] Lucio's claim that this constituted ineffective assistance was later rejected in state habeas proceedings. ROA.10092.

clinical sources [sic] in my master's degree" and "continuing education courses."
ROA.4697. She testified that there is "no license specifically for the interpretation
of body language." ROA.4697-98. Asked if she had received any accreditation on the
subject, she responded, "That's included in my clinical license that I have at both
the highest state level and the highest national level," but she conceded that her clin-
ical license did not include any subspecialties. ROA.4698. Villanueva had not written
any treatises or papers in the field of interpreting body language. ROA.4699.

The trial court excluded Villanueva's testimony, finding she was not an expert
on body language but was "imminently qualified on the issue of mitigation."
ROA.4700. Defense counsel complained that Escalon had been allowed to testify
about Lucio's body language, but the court explained that Escalon testified as to how
he interpreted Lucio's body language in approaching her to elicit a statement,
whereas Villanueva held herself out as an expert on the truth of Lucio's statements.
ROA.4700.

The defense also offered Dr. John Pinkerman to testify on Lucio's "propensity
for violence," and that she would "take blame for everything that goes on in the
house" because she suffered from battered woman syndrome. ROA.4751. Noting
that Lucio denied "having anything to do with" Mariah's death, the court concluded
that Pinkerman's opinion did not "go to the guilt or innocence," though he could
see how it applied to mitigation. ROA.4752. In his bill of particulars,[4] however,

---

[4] The "bill of particulars" refers to the procedure for making an offer of proof at
trial. *See* Tex. R. Evid. 103(a)(2).

Pinkerman did not mention battered-woman syndrome or Lucio's tendency to assume blame for things she did not do. ROA.4759.

In closing, the State asked the jury to infer from the admitted abuse that Lucio inflicted the fatal injury, that her denial of hitting Mariah in the head was not credible, and that the evidence showed an intentional injury and not an accidental fall. *E.g.*, ROA.15345. The defense argued that the State had not proven beyond a reasonable doubt that Lucio killed Mariah, emphasizing that Lucio admitted to abusing Mariah but not to killing her. ROA.4789 ("She confessed to bruising that child from head to foot. She confessed to neglect. She didn't confess to murder.").

The jury convicted Lucio of capital murder. ROA.7678.

## B. Punishment Phase

Villanueva and Pinkerman both testified during the punishment phase. Villanueva testified that she "was hired to do a social history and look through CPS records." ROA.5074. She testified that Lucio's appearance during the videotaped interview, including her expression and posture, was "a classic symptom of individuals who are abused," ROA.5031, and typical of a battered woman, ROA.5032. Asked to explain "battered woman syndrome," ROA.5032, Villanueva referred briefly to "a lot of research" on "personality attributes, emotional reactions, and body language," but did not elaborate. ROA.5033. Villanueva expressly denied any expertise in the interpretation of body language, ROA.5063, insisting that she "did not interpret body language" but "showed patterns of behavior." ROA.5084.

Dr. Pinkerman testified that he was hired by defense counsel through a court order to "appear as a mitigator." ROA.5115. He offered his opinion that Lucio

presented a low risk of future dangerousness. ROA.5126. He expressly denied making any conclusion that Lucio had battered-woman syndrome, ROA.5168, explaining that Lucio did not fall within any of the recognized categories of women considered likely to kill their children. ROA.5172-74.

Based on the jury's answers to the special issues at the punishment phase, the trial court sentenced Lucio to death. ROA.7678. The trial court denied Lucio's motion for new trial. ROA.10698.

## III. Direct Appeal

On direct appeal, Lucio claimed that the trial court erred in excluding Villanueva and Pinkerman from the guilt-innocence phase of trial. Lucio cited *Rock v. Arkansas*, 483 U.S. 44 (1987), and *Crane v. Kentucky*, 476 U.S. 683 (1986), ROA.10841; ROA.10844, but she did not allege a violation of her constitutional rights. Instead, she claimed that the trial court misapplied state evidentiary rules by erroneously excluding testimony relevant to the voluntariness of her recorded statement to police. ROA.10841; ROA.10845.

The CCA denied relief, holding that Lucio failed to preserve her claims, *Lucio v. State*, 351 S.W.3d 878, 900, 902 (Tex. Crim. App. 2011); that the trial court did not abuse its discretion by excluding the proposed expert testimony on "voluntariness," *id.* at 901, 902; and that any error was harmless because the proposed testimony was marginally relevant, at best, *id.* at 901, 902. It explained that Lucio's "claim on appeal as to what [the experts'] testimony would have been does not comport with [the experts'] proffered testimony at trial" or with trial counsel's description of their testimony. *Id.* at 900, 902. The CCA affirmed the conviction and death sentence. *Id.* at

910. The Supreme Court denied Lucio's petition for a writ of certiorari. *Lucio v. Texas*, 132 S. Ct. 2712 (2012).

## IV. State Habeas Review

In her state habeas application, Lucio raised the following claim regarding the exclusion of her expert witnesses:

> ISSUE FOUR: The trial court deprived Melissa of the constitutional right to present a complete defense when it excluded the testimony of defense experts during the guilt/innocence phase of trial.

ROA.8029. Lucio premised her complete-defense claim on the trial court's alleged misapplication of state evidentiary rules. She asserted that the trial court violated her right to present a complete defense because it improperly excluded relevant expert testimony as irrelevant. *See* ROA.8034 ("[T]he trial court violated Melissa's right to present a complete defense when it disallowed her expert's testimony during guilt/innocence as irrelevant."). She acknowledged that rules "ensuring that only reliable evidence is presented at trial," including the rule against irrelevant evidence, "serve[] a legitimate interest and do[] not unconstitutionally abridge the right to present a defense." ROA.8032 (citing *United States v. Scheffer*, 523 U.S. 303, 309, 317 (1998)). She argued, however, that "the evidence at issue here *was not irrelevant* to the issue of Melissa's guilt or innocence." ROA.8032 (emphasis added).

The trial court entered findings of fact and conclusions of law and recommended denial of relief on all claims. It found that Villanueva "proffered nothing to indicate that she had any sort of specialized experience, knowledge or training in the area of interpreting body language and patterns of behavior during police interviews," and

that Pinkerman's testimony regarding "psychological functioning, including how there was little support in the 'historical record' for the idea that Applicant physically abused her children, that she suffered from battered woman syndrome, and the meaning of her demeanor after the incident and during questioning had no relevance to the question of Applicant's guilt or innocence." ROA.10091. It concluded, "This Court did not abuse its discretion in excluding the testimony of Norma Villanueva and Dr. John Pinkerman," ROA.10095, and that "Applicant is not entitled to habeas relief." ROA.10096. The CCA denied Lucio's state habeas application "based on the trial court's findings and conclusions and our own review." ROA.5860.

## V. Federal Habeas Petition

In her federal habeas petition, Lucio again claimed that the exclusion of her expert witnesses violated her right to a complete defense:

> GROUND FOUR: The trial court deprived Melissa of the constitutional right to present a complete defense when it excluded the testimony of defense experts during the guilt/innocence phase of trial.

ROA.157. Lucio cited several Supreme Court cases that did not appear in her state habeas application. *See* ROA.161 (citing *Holmes v. South Carolina*, 547 U.S. 319 (2006); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Yet her argument explaining why the state court's evidentiary ruling violated her right to present a complete defense was identical to her argument in the state habeas application. *Compare* ROA.163-64 *with* ROA.8032-34.

The Director responded that aside from conclusory allegations about the denial of her constitutional rights, Lucio's complete-defense claim was merely a challenge to the trial court's application of legitimate state evidentiary rules. ROA.373. The Director explained that the Supreme Court had found a violation of the right to a complete defense only "where an arbitrary *evidentiary rule* kept the evidence out." ROA.376 (citing *Holmes*, 547 U.S. 319; *Rock*, 483 U.S. at 61; *Chambers*, 410 U.S. at 302-03; *Washington*, 388 U.S. at 22). In each of those cases, a state evidentiary rule was deemed facially inconsistent with the Constitution.

Lucio, however, sought to alter the complete-defense rule to focus on "individual rulings—i.e. allegations of trial court error—as opposed to evidentiary rules." ROA.376. The Director argued that any attempt to extend the Supreme Court's complete-defense precedent to the application of non-arbitrary evidentiary rules "is barred under *Teague v. Lane*, 489 U.S. 288 (1989)." ROA.377.

Lucio responded that her claim fell within existing Supreme Court precedent on the right to a complete defense because she alleged that the trial court made "an arbitrary evidentiary *ruling*." ROA.489 (emphasis added). Thus reframing the issue, she argued that if the Supreme Court had already found "an arbitrary evidentiary *ruling*" to violate the right to a complete defense, then her claim "does not create a new rule of constitutional law." ROA.489 n.9 (emphasis added).

The district court denied relief on all claims, dismissed Lucio's federal habeas petition, and declined to issue a certificate of appealability. ROA.577. Addressing Lucio's complete-defense claim, the district court recognized that due-process rights are violated if evidentiary rules are "arbitrary or 'disproportionate to the

11

purposes they are designed to serve," ROA.556 (quoting *Scheffer*, 523 U.S. at 308). But it concluded that "[t]he evidentiary rules invoked by the trial court were neither arbitrary nor disproportionate," and that "Lucio's real complaint" was "not with the rules themselves, but with the trial court's application of those rules to her particular case." ROA.556. It explained that federal courts may grant habeas relief based on evidentiary rulings of a state court "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process clause." ROA.556-57 (quoting *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984)). The district court concluded that excluding Villanueva's testimony for lack of qualification was not incorrect, that excluding Pinkerman's testimony as irrelevant "did not deny Lucio a fair trial, and thus did not violate her right to due process," and that Lucio's complete-defense claim lacked merit. ROA.557.

A panel of this Court granted a certificate of appealability "on the question of whether the exclusion of Lucio's proffered experts on the credibility of her confession violated her constitutional right to present a complete defense." *Lucio v. Davis*, 751 F. App'x 484, 494 (5th Cir. 2018) (per curiam). Holding that the state court failed to adjudicate Lucio's claim on the merits, the panel reviewed that claim de novo, held that excluding Dr. Pinkerman's testimony violated Lucio's right to present a complete defense, and reversed and remanded with instructions to grant relief. *Lucio v. Davis*, 783 F. App'x 313, 325 (5th Cir. 2019) (per curiam). This Court granted the Director's petition for rehearing en banc. *Lucio v. Davis*, 947 F.3d 331 (5th Cir. 2019) (per curiam).

## Summary of the Argument

The state court adjudicated Lucio's complete-defense claim on the merits because it denied relief on non-procedural grounds, and it addressed Lucio's claim exactly as it was presented in her state habeas application. If Lucio's claim was adjudicated only on state-law grounds, as she now argues, that implies that her claim is not cognizable in federal habeas proceedings because the state court adjudicated the only claim she brought, and if that claim sounded in state law, it cannot form the basis of federal habeas relief. And to the extent Lucio now seeks to raise a different complete-defense claim, that claim is unexhausted. There is no question that the state court adjudicated Lucio's claim on the merits. The only question is whether that claim can support federal habeas relief.

Assuming that Lucio asserts a properly exhausted, cognizable federal claim, it is subject to AEDPA's relitigation bar. Lucio cannot overcome the relitigation bar because the state court's decision was not contrary to, and did not involve an unreasonable application of, clearly established law establishing the right to present a complete defense. The Supreme Court has found violations of the complete-defense right when state evidentiary rules categorically exclude factual evidence in an arbitrary or irrational manner. No Supreme Court holding clearly establishes that the right to a complete defense entitles a defendant to introduce expert testimony or to introduce evidence to undermine the credibility of the defendant's own statements. Nor can Lucio overcome the relitigation bar based on an unreasonable determination of facts. The factual determinations on which she relies are not factual determinations at all but legal conclusions or applications of law to fact. In any case, she does

not offer any clear and convincing evidence to prove that any supposed factual finding is incorrect, and she could not prove that any such finding is unreasonable.

Even if she could overcome AEDPA's relitigation bar, Lucio could not secure federal habeas relief. Her claim is independently barred under *Teague* because she asks this Court to announce a new rule of constitutional criminal procedure—specifically, that state courts must admit expert testimony to cast doubt on the credibility of a defendant's own statements even if that testimony would be excluded by a correct application of state evidentiary rules. And even if she could overcome both AEDPA and *Teague*, her claim would fail on de novo review because evidentiary rules governing expert testimony serve the legitimate purpose of ensuring the admission of reliable, relevant testimony; the trial court's application of those rules to exclude Lucio's proffered expert testimony was rational and consistent with the purpose of the rules; and the exclusion of expert opinion testimony on the defendant's own credibility does not affect a weighty interest.

**A R G U M E N T**

## I. Lucio's Claim Was Adjudicated on the Merits in State Court.

In Issue Four of her state habeas application, Lucio advanced a single claim: The trial court denied her "constitutional right to present a complete defense when it excluded the testimony of defense experts during the guilt/innocence phase of trial." ROA.8029. The state court did not deny Lucio's complete-defense claim on procedural grounds. ROA.162. Lucio nevertheless maintains that her claim was not adjudicated on the merits for purposes of 28 U.S.C. § 2254(d) because the state court

decided her constitutional claim "on less-protective state-law grounds." Br. 23. Lucio is wrong. While there is reason to doubt whether Lucio has properly presented a cognizable federal claim, there is no doubt that the claim she presented in state court was adjudicated on the merits.

### A. The complete-defense claim presented in Lucio's state habeas application was adjudicated on the merits.

Lucio claims that the state habeas court did not adjudicate her constitutional claim on the merits because it "concluded only that the trial court 'did not abuse its discretion in excluding the testimony of Norma Villanueva and Dr. John Pinkerman." Br. 44 (quoting ROA.10095). And she argues that "the state court's findings [were] silent on Lucio's constitutional claim" because (1) "it found the habeas claim 'nearly identical to' the non-constitutional state-law issues raised on direct appeal," *id.* (citing ROA.10091 ¶ 39), and (2) "the state court explained its finding in terms of the abuse-of-discretion standard used for state evidentiary issues," *id.* (citing ROA.10091 ¶ 40). But the record shows that the state habeas court responded directly to Lucio's complete-defense claim when it denied relief.

There is no ambiguity in the basis of Lucio's state habeas claim or the state court's judgment. Lucio brought a single complete-defense claim. She expressly premised that claim on the trial court's alleged erroneous application of state evidentiary rules governing admissibility of expert testimony. ROA.8032-34. The relevant evidentiary rules are subject to review for abuse of discretion, as she acknowledged. ROA.8029 (citing *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (stating that "[a] trial court's decision to admit or exclude evidence" is reviewed for

abuse of discretion and will not be reversed "unless that ruling falls outside the zone of reasonable disagreement")). And she conceded that rules excluding unreliable evidence—including rules against irrelevant evidence—"serve[] a legitimate interest and do[] not unconstitutionally abridge the right to present a defense." ROA.8032 (citing *Scheffer*, 523 U.S. at 309). She argued that the trial court abridged her right to present a defense, however, because "the evidence at issue here was not irrelevant to the issue of [her] guilt or innocence." ROA.8032. In other words, Lucio claimed that the state court violated her right to a complete defense because it incorrectly deemed her evidence irrelevant under state law. The state court's conclusion that the trial court did not abuse its discretion therefore responded directly to the substance of Lucio's complete-defense claim.

There is no question that the state court adjudicated Lucio's claim because its judgment was not silent; it expressly addressed the claim that Lucio raised as Issue Four of her state habeas application. *Cf. Johnson v. Williams*, 568 U.S. 289, 292 (2013) (discussing state court opinions "that address[] some issues but do[] not expressly address the federal claim in question"). In doing so, the state court "heard and evaluated the evidence and the parties' substantive arguments" and decided "the intrinsic rights and wrongs of the case." *Id.* at 302. Lucio did not even raise a parallel state-law claim or purport to advance an alternative state-law ground for the claim she raised. *Cf. id.* at 305-06 (discussing whether state statutory claim and Sixth Amendment claim were "perfectly coextensive" or "interchangeable"). The state court could only have adjudicated the claim Lucio raised.

Nor does Lucio's argument find support in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Br. 40. At the outset, there is no need to "look through" the CCA's decision because it was not "silent." *Cf. id.* at 1195. The CCA expressly adopted the trial court's proposed findings and conclusions, and it denied relief on all claims "based upon [those] findings and conclusions and [its] own review." ROA.5860. Those findings and conclusions were not incorrect, much less unreasonable.

But even if a finding were unreasonable, that would "provide[] some evidence that makes it less likely the state supreme court adopted the same reasoning." *Wilson*, 138 S. Ct. at 1196. Federal courts may still look beyond the written opinion to consider briefing, argument, or other reasons that are "obvious" from the record. *See id.* at 1192. That is so whether a state court rules summarily or relies on its own review on top of a lower court's findings. Otherwise, federal courts would have to assume that the state court adopted an unreasonable position rather than accounting for the evidence before it—an assumption contrary to "the benefit of the doubt" section 2254 demands and "inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). *Wilson* did not overrule *Early v. Packer*, 537 U.S. 3 (2002) (per curiam), or *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam), and it does not authorize federal courts to undertake an exacting critique of state court decisions, either for error correction or to conclude that the state court inadvertently failed to address a federal claim. *See Langley v. Prince*, 926 F.3d 145, 163 (5th Cir. 2019) (en banc).

Here, the CCA engaged and adjudicated the only constitutional complete-de-fense claim that Lucio presented on the same terms in which she presented it. That

is a determination on the merits. Assuming that Lucio's state habeas application raised a cognizable federal claim, AEDPA's relitigation bar applies.

## B.  If the state court did not adjudicate a federal claim on the merits, it follows that Lucio's claim is not cognizable in federal habeas.

If Lucio is correct that the state court's decision failed to adjudicate a federal constitutional claim, the only explanation is that Lucio failed to raise a cognizable federal claim in state court. The state court adjudicated the only complete-defense claim that Lucio raised. If that decision rested solely on state-law grounds, it is because Lucio's claim sounded only in state law. Thus, if Lucio is correct about the state court's decision, and if she presses the same claim here, her claim is not cognizable in federal habeas proceedings.

Whether a given claim is cognizable presents a threshold question. *See United States v. Addonizio*, 442 U.S. 178, 184 (1979) (describing cognizability as a "jurisdictional issue"); *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1979). Here, cognizability is rooted in the statutory text. Under AEDPA, federal courts may consider a state prisoner's habeas application *only* on the basis that she "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also id.* § 2241(c)(3). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

To the extent Lucio's complete-defense claim turns on an alleged error of state law, she does not present a cognizable federal habeas claim. A claim challenging a state evidentiary rule may be cognizable if it asserts that the state law itself—even correctly applied—violates the Constitution. *See, e.g.*, *Holmes*, 547 U.S. at 324-26

(collecting cases). But if a federal habeas petitioner's claim rises or falls on the merits of a state court's application of state law, that claim is not cognizable because it concerns "state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). If Lucio is right, her claim falls into the latter category.

The crux of Lucio's state habeas claim was the trial court's allegedly incorrect application of evidentiary rules on expert testimony. She did not claim that the rules in question are "arbitrary" or "disproportionate to the purposes they are designed to serve." *See Scheffer*, 523 U.S. at 308. To the contrary, she conceded that they are legitimate and do not "unconstitutionally abridge the right to present a defense." ROA.8032 (citing *Scheffer*, 523 U.S. at 309, 317). She argued, instead, that the trial court applied those rules incorrectly to her particular case, and that the trial court's incorrect application violated the Constitution.

Lucio's constitutional claim vanishes if the state court did not err in applying state law. If the state courts had correctly applied Texas evidentiary law (as Lucio understands it), they would have recognized that her proffered expert testimony was admissible. *See* ROA.556. And if they had, she would have no constitutional complaint because the evidentiary rules themselves do not "unconstitutionally abridge the right to present a defense." ROA.8032. This indicates that Lucio's claim for habeas relief is based on an "allegedly incorrect [application of] state law." *McGuire*, 502 U.S. at 71. But "that it is not the province of a federal habeas court." *Id.* at 68-69. That provides an independent basis to deny habeas relief.

### C. If Lucio presses a different claim, that claim is unexhausted.

Lucio now seeks to distance herself from the claim she raised in state court. Shifting focus, she asserts: "Whether a judge abused his discretion when he excluded evidence under state law is neither a necessary nor a sufficient condition to deciding a constitutional complete-defense claim." Br. 45. She argues, citing *Green v. Georgia*, 442 U.S. 95, 97 (1979) (per curiam), *Chambers*, 410 U.S. at 302, and *Crane*, 476 U.S. at 690-91, that even a valid application of state evidentiary rules can violate the right to a complete defense. Br. 45. True, but that was not her claim in state court. She did not discuss *Green*, *Chambers*, or *Crane*,[5] and she never argued that "the federal constitutional right was violated even though the trial court correctly applied state law," Br. 46. Lucio made the trial court's state-law error an integral part of her complete-defense claim and a necessary condition to finding a constitutional violation.

Here, Lucio gives only a partial description of the claim she presented in state court. She argues that she "briefed the federal constitutional law, facts, and application of that law to those facts more than adequately to give the state court the opportunity to resolve her claim." Br. 42. But Lucio's description conspicuously omits the "application of law to facts" that she presented in state court. There, Lucio relied on three cases: *United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996); *United States v.*

---

[5] Lucio now says that "her habeas claim, like two claims raised on appeal, relied upon *Crane v. Kentucky*," Br. 43 n.13, but read in context (she did not otherwise cite or discuss *Crane*), the cited footnote seems to disclaim reliance on *Crane*. There, she distinguished her complete-defense claim from "the claim raised on direct appeal that the trial court abused its discretion by preventing [her] from presenting evidence regarding the circumstances under which her confession was taken. *See* Direct Appeal Brief (citing *Crane v. Kentucky* . . .)". ROA.8029 n.36.

*Cohen*, 510 F.3d 1114 (9th Cir. 2007); and *Kaps v. State*, 1998 WL 209060 (Tex. App.—Dallas, 1998, no pet.). *See* ROA.8032-33. Each of those cases involved direct review of an evidentiary ruling excluding expert testimony in a criminal trial. Not one of those opinions mentioned the Constitution or the right to a complete defense.

In *Hall*, the defendant challenged the exclusion of expert testimony "about false confessions and his susceptibility to coercion," 93 F.3d at 1341, but he did not raise a constitutional claim. The questions presented on appeal concerned the district court's application of Federal Rule of Evidence 702 under "the framework set forth in *Daubert*," and whether its findings were clearly erroneous. *Id.* at 1342. The Seventh Circuit held that the district court incorrectly applied Rule 702, *id.* at 1342, 1346, but it did not mention the Constitution or the right to a complete defense.

Similarly, *Cohen*, 510 F.3d at 1123, involved a claim that the district court erroneously excluded expert testimony under Federal Rules of Evidence 702 and 704(b). The Ninth Circuit reviewed the district court's ruling for abuse of discretion, holding that the expert's testimony should have been admitted in part under Rule 702, even though portions of his proffered testimony "would have invaded the province of the jury and violated Rule 704(b)." *Id.* at 1126. But it did not decide any constitutional claim. *See id.* at 1127 (evaluating harmfulness under "our test for nonconstitutional error, which we apply to errors as to the admissibility of expert testimony").

Finally, Lucio cited *Kaps v. State*, ROA.8033, which held that the exclusion of expert testimony at the guilt-innocence phase under Texas Rule of Evidence 702 was not an abuse of discretion, 1998 WL 209060, at *8. In *Kaps*, the defendant was convicted of injury to a child for "shaking" a baby. He offered expert psychological

testimony "that he was not a typical physically abus[ive] man, one who used physical means to control his family." *Id.* The court of appeals held that the trial court did not abuse its discretion because the expert testimony was not relevant; it "merely addressed whether [defendant] was *likely* to engage in violent conduct, not [his] mental state when he *actually* engaged in such conduct." *Id.* at *8.[6] The court did not address any constitutional claim.

Here, Lucio declines to mention *Hall*, *Cohen*, or *Kaps*, but her state habeas application relied exclusively on those cases to explain why the trial court violated her right to present a complete defense. She maintained: "Just as in the *Hall*, *Cohen*, and *Kaps* cases, such evidence was relevant to attack the credibility of the State's case by demonstrating that Melissa did not have the propensity to commit violence against Mariah . . . ." ROA.8033-34; *see also* ROA.10137-38 (proposed conclusions of law). The state court's conclusion that the excluding Lucio's experts was not an abuse of discretion responded directly to the argument Lucio made in state court.

Lucio now attempts to recast her state court argument by insisting that she "drew the state court's attention to the distinction between 'the trial judge['s] . . . discretion' to exclude evidence and 'a criminal defendant's constitutional right to present a complete defense.'" Br. 43 (quoting ROA.8029). That quotation from her state habeas application is incomplete and misleading, but it is also telling. The full statement reads:

---

[6] Lucio's state habeas application described *Kaps* as holding that the testimony "should have been admitted during the guilt/innocence phase of the trial." ROA.8033.

Although the trial judge has discretion in determining whether the evidence is to be admitted or excluded, *see Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002), a criminal defendant's constitutional right to present a complete defense is violated by the exclusion of evidence pursuant to a state evidentiary rule that categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence that is vital to his defense. *Wiley v. State*, 74 S.W.3d 399, 406-07 (Tex. Crim. App. 2002) (quoting *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002) (en banc)).

ROA.8029. That passage clearly distinguishes the claim Lucio raised—that the trial court improperly exercised its discretion—from the claim that she did not make— that her expert testimony was excluded by operation of a "categorical" and "arbitrary" state evidentiary rule. Lucio's concession that a rule against unreliable and irrelevant evidence "serves a legitimate interest and does not unconstitutionally abridge the right to present a defense," ROA.8032 (citing *Scheffer*, 523 U.S. at 309, 317), confirms that she did not challenge the evidentiary rules themselves. Instead, she challenged the trial court's application of those rules to her case, ROA.8032 ("the evidence at issue here was not irrelevant"), which explains why her argument relied solely on cases reviewing evidentiary rulings on non-constitutional grounds.

If the state court did not adjudicate the merits of the federal claim Lucio now presses, it is only because she has "fundamentally altered" the claim she presented to the state courts. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Escamilla v. Stephens*, 749 F.3d 380, 394-95 (5th Cir. 2014). That claim would therefore be unexhausted. *Hillery*, 474 U.S. at 260; *see Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990) (holding that "*both* the legal theory and the facts on which a federal claim rests must have been presented to the state courts" for exhaustion"). And this Court could not grant relief. *See* 28 U.S.C. § 2254(b)(1)(A).

Lucio maintains that she presented her federal claim to the state court, and the state court failed to address it. But her brief appears to change the underlying legal theory of that claim. Lucio was entitled to frame her state habeas application as she wished. But she is not entitled to sandbag the state court by choosing not to advance the theory she advances in federal court—or to cite, let alone discuss, the clearly established precedent she relies upon—then fault the state court for failing to adjudicate her claim on the merits and thereby circumvent AEDPA's relitigation bar. *Cf. Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (per curiam) (explaining that the Ninth Circuit "inverted the rule established in [*Harrington v.*] *Richter*[, 562 U.S. 86 (2011)]" by considering "arguments against the state court's decision that Beaudreaux never even made in his state habeas petition"). If Lucio's claim differs materially from the claim she raised in state court, that claim is unexhausted, and she cannot secure federal habeas relief.

## II. Lucio Cannot Overcome AEDPA's Relitigation Bar.

Assuming that Lucio properly presented a cognizable complete-defense claim in state court, that claim is subject to AEDPA's relitigation bar, which provides that a state prisoner's federal habeas application "shall not be granted" on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). AEDPA provides further that factual determinations by the state court are "presumed to be correct. The applicant shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The statutory phrase "clearly established Federal law" in section 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Section 2254(d)(1) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings," but it permits relitigation of such claims only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Richter*, 562 U.S. at 102.

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court, or if the state court's decision differs from a Supreme Court decision addressing "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. at 405-06. A state court's decision qualifies as an "unreasonable application" under section 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. But the Supreme Court has cautioned that under AEDPA, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410).

A state prisoner cannot overcome AEDPA's relitigation bar based on a state court's failure to extend existing precedent. "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it

does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014). This means that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). A state court's decision is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fair-minded disagreement' on the question." *Id.* at 427 (quoting *Richter*, 562 U.S. at 103).

Lucio contends that the state court's judgment is contrary to and involves an unreasonable application of clearly established Supreme Court law. She claims that the decision "is plainly 'contrary to' the clearly established precedent of *Chambers*, *Crane*, and *Green*." Br. 49. Similarly, she claims that the state court's judgment involves "an unreasonable application of the substantially similar decisions of *Chambers* and *Crane*." Br. 51. Lucio is wrong on both counts.

## A. The state court's decision is not contrary to clearly established federal law.

The first step under AEDPA is to determine "the clearly established Federal law." *Langley*, 926 F.3d at 156. This threshold question can be dispositive because "a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law if there is no clearly established federal law." *Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017). That question is dispositive here because Lucio identifies no clearly established federal law that governs her claim.

Lucio contends that she had a constitutional right to present expert testimony to cast doubt on the credibility of her own statements. She explains that her trial counsel "intended to elicit the opinion that Lucio's lifetime of enduring abuse herself made her susceptible to a false confession to a male interrogator," Br. 32, and that her experts would have introduced "critical testimony casting doubt on a damning 'confession.'" Br. 51. Lucio contends that the state court's decision was "contrary to" clearly established law because it "applie[d] a state-law rule that is less protective than the controlling federal law rule." Br. 50. That controlling federal law, according to Lucio, is "the federal complete-defense rule." *Id.* Lucio contends that the state court's decision was contrary to that rule because it "fail[ed] to consider the interest at stake or any part of the federal test," which she describes as "[1] whether the excluded evidence was critical to Lucio's defense; [2] whether the asserted reasons for exclusion were arbitrary or disproportionate to the applied rules' purposes; [3] whether the excluded testimony was otherwise reliable or trustworthy; [4] or whether the exclusions harmed Lucio's defense." Br. 50-51.

Lucio's formulation of clearly established federal law suffers from two fatal defects. First, Lucio's proposed "federal complete-defense test" defines the relevant clearly established law at an impermissibly high level of generality. Second, accepting Lucio's contention that *Chambers*, *Green*, and *Crane* announce the governing law, those cases do not clearly establish a rule that supports Lucio's claim. Lucio cannot cite any Supreme Court case holding that the right to a complete defense entitles a defendant to introduce expert testimony on the credibility of her own statements.

**1.** To overcome AEDPA's relitigation bar based on a decision "contrary to clearly established federal law," a petitioner must offer more than a general statement of federal law. This Court has explained: "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Langley*, 926 F.3d at 157 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). Lucio's "federal complete-defense rule" fails this test.

In *Langley*, the Court held that it was not enough to say "that the '*Ashe* doctrine' forms the relevant clearly established law, or that *Ashe* [*v. Swenson*, 397 U.S. 436 (1970)] established the 'governing principles.'" 926 F.3d at 156. It explained that *Ashe* and subsequent cases applied issue-preclusion principles to issues necessarily decided by an acquittal. *See id.* at 157-58. But none of those cases held that issue-preclusion principles applied to a conviction. *Id.* at 158. Accordingly, this Court held that there was "no 'clearly established Federal law, as determined by the Supreme Court,' explaining whether and to what extent a state court should find issue preclusion following a conviction." *Id.*

The Supreme Court applied the same principle in *Carey v. Musladin*. There, the state court held that the defendant's fair-trial rights were not violated when the victim's family members wore buttons with the victim's image at trial. 549 U.S. at 72. The Ninth Circuit held that the state court's decision was contrary to and unreasonably applied clearly established federal law, *see id.* at 73-74, as articulated in *Estelle v. Williams*, which found inherent prejudice in forcing a defendant to attend trial in prison clothing, 425 U.S. 501, 512 (1976). The Supreme Court reversed, holding that

28

*Williams* did not create clearly established federal law governing the petitioner's claim because its holding was confined to "an accused who is compelled to wear identifiable prison clothing at his trial by a jury." *Musladin*, 549 U.S. at 75. Because no Supreme Court holding required the state court to apply *Williams* to the spectators' buttons, "the state court's decision was not contrary to or an unreasonable application of clearly established federal law," *id.* at 77.

Lucio defines clearly established federal law at an even higher level of generality than the formulations rejected in *Langley* and *Musladin*. Lucio appears to divine her proposed rule from an assortment of cases addressing a variety of state evidentiary rules. *See* Br. 49 (citing Br. parts I.A, II.A). That alone defeats her argument about clearly established law. If no Supreme Court case confronts "the specific question presented," the state court's decision cannot possibly be "contrary to" any holding of the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam); *Woodall*, 572 U.S. at 426. Lucio identifies no Supreme Court holding articulating her purported "federal complete-defense test." And she identifies no Supreme Court holding that applies that test to decide "whether and to what extent" the Constitution requires a state court to admit expert testimony to cast doubt on the credibility of a defendant's own statements. *Cf. Langley*, 926 F.3d at 158.

**2.** Narrowing the focus to *Chambers*, *Green*, and *Crane* does not change the result. Lucio insists that those cases are "substantially similar" to this case. But the Supreme Court has instructed that "if the circumstances of a case are only 'similar to' our precedents, then the state court's decision is not 'contrary to' the holdings in those cases." *Woods*, 575 U.S. at 317 (citing *Musladin*, 549 U.S. at 76–77). To set

aside the relitigation bar, Lucio must show that the state court's decision "contradicts the governing law set forth" in *Chambers, Green*, and *Crane*, or that the facts of those cases are "materially indistinguishable." *Williams*, 529 U.S. at 405-06. She cannot make either showing.

In *Chambers*, the Supreme Court found a due process violation based on Mississippi's "voucher rule," which prevented parties from impeaching their own witnesses, and Mississippi's hearsay rule, which did not recognize an exception for statements against penal interest. 410 U.S. at 302. The defendant in a murder trial sought to show that another person committed the crime. First, he called Gable McDonald, who had previously signed a written confession and who had separately confessed to three people. *Id.* at 287-88. But McDonald retracted his confession on the stand. Chambers tried to cross-examine McDonald, but he was thwarted by the State's "voucher rule" because he had called McDonald. *Id.* at 291-92. Chambers then attempted to introduce the testimony of three witnesses to whom McDonald had confessed to the murder, but the trial court sustained the State's objection under Mississippi's hearsay rule. *Id.* at 293, 299. As a result, Chambers was "unable either to cross-examine McDonald or to present witnesses in his own behalf who would have discredited McDonald's repudiation and demonstrated his complicity." *Id.* at 294. Mississippi did not defend its voucher rule or attempt to explain its rationale, *id.* at 297, and the Court held that the excluded hearsay testimony "bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." *Id.* at 302. In the circumstances, and considering the fundamental right of a defendant to present witnesses in his on behalf,

the Court held that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* The combined effect of Mississippi's categorical rules denied Chambers "a trial in accord with traditional and fundamental standards of due process." *Id.*

In *Green v. Georgia*, 442 U.S. 95, the Court held that Georgia's hearsay rule violated the Due Process Clause by categorically excluding exculpatory factual testimony without regard to its reliability. At the punishment phase of a capital murder case, the defendant tried to prove that he was not present when the victim was killed. *Id.* at 96. He called Thomas Pasby to testify that another individual, Carzell Moore, had confessed to the murder and stated that Green was not present. Pasby had testified for the State at Moore's trial. *Id.* But the trial court excluded Pasby's testimony under Georgia's hearsay rule, which did not recognize an exception for declarations against penal interest. *Id.* at 96 & n.1. The Supreme Court held that exclusion of the testimony violated the Due Process Clause because "substantial reasons existed to assume its reliability," and "[p]erhaps most important, the State considered the testimony sufficiently reliable to use it against Moore, and to base a sentence of death upon it." *Id.* at 97. In those "unique circumstances," the Court held that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* (quoting *Chambers*, 410 U.S. at 302).

In *Crane v. Kentucky*, 476 U.S. 683, the Court held that "the blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial." *Id.* at 690. The defendant "moved to suppress his confession on the grounds that it had been impermissibly coerced." *Id.* at 684. At a pretrial

hearing to determine whether his confession was voluntary, the defendant "testified that he had been detained in a windowless room for a protracted period of time, that he had been surrounded by as many as six police officers during the interrogation, that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a false confession." *Id.* at 685. At trial, the defendant sought to introduce evidence about the circumstances of his confession, including testimony "about the size and other physical characteristics of the interrogation room, the length of the interview, and various other details." *Id.* at 686. The trial court excluded the evidence under a Kentucky rule that categorically barred evidence about the circumstances of a confession once it had been deemed voluntary. *Id.* at 686-87. The excluded testimony was "competent, reliable evidence bearing on the credibility of a confession," *Id.* at 690, and as in *Chambers*, 410 U.S. at 297, the State did not offer "any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence." 476 U.S. at 691. In those circumstances, the Court held that application of Kentucky's "wholesale exclusion of this body of potentially exculpatory evidence" violated the defendant's right to a fair trial, *id.* at 691.

The state court's decision does not contradict the governing law set forth in *Chambers*, *Green*, or *Crane* because those cases did not announce a rule governing the admissibility of expert testimony to cast doubt on the credibility of a defendant's statements. Each of those cases involved a state evidentiary rule that categorically excluded fact testimony regardless of its reliability. Here, the trial court did not apply a per se rule excluding any particular kind of evidence. No Supreme Court holding

required the state court to apply *Chambers*, *Green*, or *Crane* to the trial court's application of evidentiary rules that entail the exercise of discretion in admitting expert testimony.

## B. The state court's judgment did not involve an unreasonable application of clearly established law.

To the extent *Chambers* and *Crane* provide clearly established federal law under section 2254(d), Lucio cannot show that the state court's judgment involved an unreasonable application of that law because neither case addresses the type of evidentiary rule or the type of evidence at issue in Lucio's case. "[I]t is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam) (holding that decisions addressing the right to cross-examine witnesses did not clearly establish any right "to introduce *extrinsic evidence* for impeachment purposes"). A state court's decision is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 572 U.S. at 427 (quoting *Richter*, 562 U.S. at 103). Here, it is not so obvious that the holdings of *Chambers* and *Crane* apply to the facts of this case that fairminded jurists could not disagree.

To find an unreasonable application of *Chambers* and *Crane*, this Court would have to extend the reasoning of those decisions to a trial court's application of discretionary rules to exclude proffered expert testimony intended to undermine the

credibility of a defendant's own statement. That is not a proper application of AEDPA. *Langley*, 926 F.3d at 159-60. A state prisoner cannot overcome the relitigation bar based on a state court's failure to extend existing precedent. "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *Woodall*, 572 U.S. at 426. This means that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.* (quoting *Yarborough*, 541 U.S. at 666); *Mirzayance*, 556 U.S. at 122.

Here, fairminded jurists could conclude that the operative rule in *Chambers* and *Crane* "does not apply to the 'set of facts' at hand." *Langley*, 926 F.3d at 158 (quoting *Woodall*, 572 U.S. at 427). Lucio therefore cannot show that the state court unreasonably applied that rule here.

## C. The state court's judgment was not based on an unreasonable determination of facts.

Lucio also argues that she can overcome AEDPA's relitigation bar because the state court's opinion was "based on an unreasonable determination of facts." Br. 53. Lucio's reliance on section 2254(d)(2) fails for three reasons.

Lucio's argument fails at the outset because she ignores section 2254(e)(1), which provides that a state court's findings of fact are "presumed to be correct" and requires "clear and convincing evidence" to rebut the presumption. Lucio makes no effort to prove, by clear and convincing evidence, that the state court's factual

findings are incorrect. Without that proof, she cannot show that its factual findings are unreasonable. *See Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (noting that "[section] 2254(e)(1) supplements § 2254(d)(2)" and the clear-and-convincing evidence standard "is 'arguably more deferential' to the state court than is the unreasonable-determination standard").

In any event, the factual findings she attacks as unreasonable are not findings of fact. Her discussion of the state court's supposed "application of the wrong legal standard," Br. 53-54, repurposes her legal argument about clearly established federal law. The state court's determination that her complete-defense claim was "nearly identical" to her claims on direct appeal (Br. 54) is not a factual finding; it is a legal conclusion about the substance of her claims, and the state court's judgment was not "based on" that supposed finding. *See, e.g.*, *O'Quinn v. Spiller*, 806 F.3d 974, 978 (7th Cir. 2015); *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011). The state court's judgment was based on the claim presented in Lucio's state habeas application.

The state court's *Daubert* ruling that Villanueva lacked specialized experience, knowledge, or training (Br. 54-55) is not a factual finding; it is an application of evidentiary rules to the facts. *See Thompson v. Thaler*, 432 F. App'x 376, 378-79 (5th Cir. 2011) (treating relevance under Texas Rule of Evidence 401 as a legal, not a factual, conclusion). Lucio does not claim that the court misunderstood Villanueva's experience; she claims that it failed to properly evaluate that experience under *Daubert*. Similarly, the determination whether Pinkerman's testimony was relevant to Lucio's guilt or innocence (Br. 55) is a mixed question of law and fact. *Id.* Lucio does not

suggest that the court misinterpreted his experience; she claims that it improperly applied the relevance standard. Finally, Lucio's argument that the state court's process was so deficient to make its factual findings unreasonable (Br. 55-56) is a legal argument about the sufficiency of state procedures, not a complaint about a factual finding by the state court. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2277 n.3 (2015) (noting "the adequacy of [state court fact-finding] procedures" is a legal question).

Finally, even if any of the challenged conclusions are factual findings, they are not unreasonable. The only determination that might be considered a finding—that Villanueva proffered no evidence that she had "specialized experience, knowledge or training in the area of interpreting body language and patterns of behavior during police interviews" (Br. 54)—is neither unreasonable nor incorrect. Lucio does not present clear and convincing evidence that Villanueva had such specialized experience or training. *Blue*, 665 F.3d at 654. She offers only a conclusory charge that the state court's finding was not "plausible." Br. 54.

## III. Lucio Cannot Secure Federal Habeas Relief Even if AEDPA Does Not Bar Relitigation of Her Claim.

To secure federal habeas relief, Lucio must do more than overcome AEDPA's relitigation bar. *E.g.*, *Langley*, 926 F.3d at 156. She must still show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review [under] § 2254(a)."). Lucio is not entitled to federal habeas relief for two reasons. First, relief is barred by the retroactivity principles articulated in *Teague*

*v. Lane*, 489 U.S. 288. Second, even if she could cross the *Teague* threshold, her complete-defense claim fails on de novo review.

### A. Lucio's complete-defense claim is barred under *Teague v. Lane*.

If AEDPA did not bar relitigation of Lucio's complete-defense claim, Lucio would still be subject to *Teague*, which holds that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310 (plurality op.). The Supreme Court has explained that "the AEDPA and *Teague* inquiries are distinct," and it has instructed that "in addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* analysis when the issue is properly raised by the state." *Horn v. Banks*, 536 U.S. 266, 272 (2002) (per curiam). Here, the Director has properly raised the issue in the district court and in this Court, *Goeke v. Branch*, 514 U.S. 115, 117-18 (1995) (per curiam), and *Teague*'s threshold analysis independently forecloses federal habeas relief because Lucio's request for federal habeas relief depends on the announcement of a new constitutional rule of criminal procedure.

Lucio asks this Court to hold, for the first time, that state courts must admit expert testimony offered to undermine the credibility of a defendant's own statement even if the exclusion of that evidence under legitimate state evidentiary rules on expert testimony would not be an abuse of discretion. *Supra* Part II.A. That rule would have a substantial impact on Texas criminal law, among other reasons because Texas requires a "contemporaneous electronic recording" of custodial interrogations related to certain crimes, including murder. Tex. Code Crim. Pro. art. 2.32(b).

Because that rule was not "compelled by existing precedent" when Lucio's conviction became final, it is a new rule. *Netherland*, 521 U.S. at 156. And a new rule may not apply retroactively to a habeas petitioner like Lucio, unless it "falls within one of two narrow exceptions." *Tyler v. Cain*, 533 U.S. 656, 665 (2001). Lucio does not even attempt to argue that the rule she seeks satisfies either exception. *See Lambrix v. Singletary*, 520 U.S. 518, 539 (1997). Because she could not benefit from it, the decision Lucio seeks here would be an impermissible "advisory opinion." *Teague*, 489 U.S. at 316.

In fact, granting habeas relief to Lucio would require at least two new rules. First, she maintains that a trial court's exercise of its gatekeeping function under *Daubert*—which involves the discretionary application of an evidentiary rule that unquestionably serves a legitimate purpose, *see Scheffer*, 523 U.S. at 309—can violate the right to a complete defense. But the Supreme Court has never interpreted the right to present a complete defense to require state courts to exercise their discretion in a particular way; its complete-defense cases have all involved nondiscretionary rules that categorically exclude certain evidence. Second, Lucio asserts a constitutional right to present expert testimony to help the jury interpret her own statements. But the Supreme Court has never extended the complete-defense right to include expert testimony. To the extent it has considered that argument, it has rejected it—even when the challenged rule categorically excluded a certain type of expert testimony. *See id.* at 312.

Lucio asserts that the Director's *Teague* argument "borders on frivolous," Br. 56, but she offers little substantive response. To the extent that she engages the

point, Lucio validates the Director's claim that granting habeas relief would require the Court to create a new rule. According to Lucio, "If the panel had created such a rule, this Court's vacatur of the panel opinion mooted Texas's objection." Br. 56. But if vacatur of the panel's opinion mooted the *Teague* issue, it seems to follow that reaching the same result would violate *Teague*.

Lucio seeks to avoid the issue by arguing that the Director has waived any *Teague* objection. But the Director has consistently raised *Teague* as an independent basis to deny federal habeas relief. Lucio did not argue in district court that the Director's argument was too conclusory to preserve the issue. She recognized that the Director had properly invoked *Teague* by responding to the Director's argument. ROA.489 n.9. The Director repeated her *Teague* objection in this Court. Brief for Appellee 27. Lucio's argument that the Director failed to preserve the *Teague* issue is baseless. The Director "did not waive the *Teague* issue; it must be considered now; and it is dispositive." *Branch*, 514 U.S. at 118.

### B. Lucio's complete-defense claim fails on de novo review.

Even if Lucio could somehow overcome AEDPA's relitigation bar and *Teague*'s retroactivity rule, her complete-defense claim would fail on de novo review because the trial court's evidentiary ruling did not violate her constitutional rights. Lucio alleges that her right to a complete defense was violated because the experts' testimony was "(1) critical to establishing Lucio's innocence; (2) reliable and trustworthy; and (3) only excluded for reasons totally at odds with and disproportionate to the purposes of the evidence rules applied." Br. 28. Assuming that these are the elements of a complete-defense claim, Lucio fails to prove any of them.

**1.** Lucio claims that the excluded expert testimony was critical to her defense because it was "the only way to counter the prosecution's theory that Lucio's demeanor showed her denials of responsibility were false, and her acceptance of responsibility for Mariah's non-fatal injuries was a 'confession' to causing her death." Br. 29. That argument is twice wrong. The prosecution's theory was based on her statements, not her demeanor. And Lucio had options to counter that theory besides expert testimony about prior abuse, battered woman syndrome, and the meaning of her "blank stare," Br. 29. Lucio's defense was not "disabled" (Br. 4) by the exclusion of her expert witnesses because—unlike the categorical rules in *Crane* and *Chambers*—the trial court's ruling did not prevent her from introducing any factual evidence. The circumstances of her statements to police were known to the jury, which saw her interview on tape. Nothing prevented Lucio from presenting fact witnesses to testify about her body language, her propensity to take blame, or any other issue. And, unlike the defendant in *Crane*, Lucio was not barred by any rule from explaining her own statements to the jury. *Cf. Rock v. Arkansas*, 483 U.S. at 62 (holding that "Arkansas' *per se* rule excluding all posthypnosis testimony" violated the defendant's right "to testify on h[er] own behalf").

**2.** Lucio's argument that her experts' testimony was reliable lacks any foundation in the record or Supreme Court precedent. First, she asserts that the experts' reliability is established because "they actually testified to much the same opinions they would have offered" when they testified at the punishment phase. Br. 29. But qualification to provide an opinion on mitigation at punishment does not necessarily qualify an expert to give an opinion at guilt-innocence, particularly when that opinion

suggests that the jury should not believe the defendant. There was never any question that Villanueva and Pinkerman were properly retained and qualified to testify on mitigation. But it does not follow that they were qualified to render an opinion on the defendant's credibility in the guilt phase.

Lucio's reference to "indicia of reliability" supporting the experts' testimony misinterprets the Supreme Court's reasoning in *Chambers*. Br. 30. She is simply incorrect that Pinkerman's reliability was never questioned, Br. 30; questions about the reliability of his testimony contributed to the trial court's refusal to admit that testimony at the guilt phase. Lucio is correct, however, that the distinction between the experts' methodologies did not make any difference. Br. 30. Pinkerton's use of psychological tests and literature did not make his opinion any more reliable than Villanueva's. Lucio's comment that the experts were "far more reliable than Escalon's," Br. 30, is a non-sequitur. Escalon was not offered as an expert, and he did not purport to opine on the credibility of any statement. He offered factual testimony about his perception at the time of Lucio's interview.

**3.** Lucio's claim that the trial court's application of Texas Rule of Evidence 702 was "arbitrary and disproportionate" to the rule's purpose, Br. 30, ignores the purpose of the rule and the Supreme Court's complete-defense jurisprudence. States have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'" *Scheffer*, 523 U.S. at 308 (quoting *Rock*, 483 U.S. at 56). And States "unquestionably have a legitimate interest in ensuring that reliable evidence is

presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *Id.* at 309 (citing Fed. R. Evid. 702, 802, 901). The application of Rule 702 to exclude testimony that the trial court found unreliable based on Lucio's proffer was not arbitrary in any sense, and it tracked the central purpose of the rule.

The trial court's ruling did not result in "lack of parity," Br. 31, because neither the rule nor its application subjected the prosecution and defense to different rules. In *Washington v. Texas*, the Court found a lack of parity in an evidentiary rule "disqualifying an alleged accomplice from testifying on behalf of the defendant" because the rule allowed an alleged accomplice to testify for the State against the defendant. 388 U.S. at 22. This express discrimination against the defendant violated his right to compulsory process because it prevented him from presenting a witness's relevant and material testimony about "events that he had personally observed." *Id.* at 23.

The same disparity did not occur in Lucio's trial. She complains about Ranger Escalon's testimony, but that is irrelevant to application of Rule 702 because he was not offered as an expert, and he did not purport to opine on any matter beyond his personal knowledge. Escalon described his impression of Lucio's demeanor to explain why he suspected that she was withholding information. He did not rely on Lucio's demeanor to tell the jury that any statement by Lucio was incorrect or unreliable. Lucio's reliance on the supposed "fighting fire with fire" principle, Br. 31, has no bearing on the issue because it is not part of the constitutional right to a complete defense, and nothing prevented Lucio from introducing factual evidence on any

subject. In any case, Lucio had the opportunity to object to Escalon's purported opinion testimony, but she did not. ROA.4409-11.

Whether Villanueva intended to testify about the truth or falsity of a statement, as opposed to Lucio's credibility, is a distinction without a difference. Lucio admits that she intended for Villanueva to offer an opinion about Lucio's credibility to undermine her own statements. *See* Br. 32. Courts generally accept that jurors are best qualified to determine the truth or credibility of a defendant's statements. An order preventing a defendant "from introducing expert opinion testimony to bolster his own credibility," *Boyer v. Vannoy*, 863 F.3d 428, 455 (5th Cir. 2017), is not arbitrary or disproportionate to the purpose of "protecting the province of the jury on the question of credibility of a confession and the closely related ultimate issue of guilt or innocence," *id.* at 454.

Lucio's complaints related to Villanueva's qualifications are baseless. The trial court did not rely on its "personal acquaintance with a social worker" to decide that Villanueva was not qualified to offer an opinion on body language or credibility. It relied on Villanueva's failure to identify any specialized training on the subject. ROA.4694-99. Lucio never identifies a specific credential or other reason to show why Villanueva was qualified. That other experts were qualified on different subjects in different cases, Br. 33, says nothing about the trial court's application of Rule 702 in Lucio's case. And the court never said that "it would not find a psychologist unqualified to testify to the same issues," Br. 32. The court said that "an expert that is a psychologist . . . that has done studies on that and has done academic background

on that, that may or may not be appropriate." ROA.4691. Lucio does not contend that Pinkerman had any such background.

The trial court's application of Rule 702 to exclude expert testimony that it deemed unreliable based on the particular facts of Lucio's case is not "disproportionate" to the rule's objective of excluding unreliable evidence. Br. 33. A fact-specific, discretionary decision based on reliability is perfectly tailored to the rule's objective. That is why the Supreme Court has recognized that the parallel federal evidentiary rule is consistent with the "legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial." *Scheffer*, 523 U.S. at 309 (citing Fed. R. Evid. 702). And that is why the Supreme Court rejected the claim that the right to present a complete defense "encompasses a constitutional right to present polygraph evidence to bolster his credibility," *Id.* at 307 n.3, even when the relevant evidentiary rule imposed a categorical ban, *id.* at 305. The Court not only held that the categorical ban was "neither arbitrary nor disproportionate" to the purpose of the rule, it held that excluding expert testimony on the subject of credibility does not "implicate a sufficiently weighty interest of the defendant to raise a constitutional concern." *Id.* at 309.

Lucio suggests that the trial court's ruling was arbitrary or irrational because it was based on relevance, Br. 34, but this misunderstands the concept of relevance as it relates to expert testimony. Expert witness testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *E.I. du Pont de Nemours Co. v.*

*Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). In *United States v. Hall*, 93 F.3d at 1341-42, which Lucio cited in her state and federal habeas applications, the Seventh Circuit explained that the second part of the *Daubert* inquiry—whether the expert's scientific knowledge "will assist the trier of fact to understand or determine a fact in issue"—"is essentially a relevance inquiry." The trial court appropriately excluded Pinkerman's testimony as irrelevant based on its determination that it would not aid the jury in resolving any factual dispute.

**4.** Any error in excluding Lucio's experts was harmless, in any event. The likely impact of Villanueva's and Pinkerton's testimony during the guilt-innocence phase is uncertain, at best, particularly considering the vagueness of their proffered testimony. Lucio cannot show that excluding Villanueva's and Pinkerton's testimony had as "substantial and injurious effect or influence [on] the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

The available evidence suggests that the exclusion of Villanueva's and Pinkerman's testimony did not have a substantial and injurious effect on the jury's verdict. Both experts testified during the punishment phase of Lucio's trial, but the jury was not persuaded. ROA.4987-5110; ROA.5112-5189. The jury likely would have dismissed the theory that Lucio would admit to anything based on the video of Lucio's interview, which did not show a woman who took blame for everything. And Pinkerman's equivocation on the question of battered woman syndrome, ROA.5168-70, likely would have led the jury to discount Villanueva's testimony on the subject, ROA.5032-33. Whatever the case, the jury was not persuaded that Lucio should be sentenced to life imprisonment.

At any rate, both experts' testimony on the credibility of Lucio's statement would have created a new dilemma because testimony that Lucio's admissions were not credible invited jurors to discredit parts of her recorded statement (admitting abuse) while crediting others (denying responsibility for the head injury). The mere "possibility" that jurors might have reasoned past these conflicting inferences falls short of the showing required by *Brecht*, 507 U.S. at 637. But even if the expert testimony could have undermined Lucio's testimony, it would have simultaneously undermined her defense: that the jury should find her denial of responsibility for Mariah's death credible because she had admitted to other instances of abuse. ROA.15340-43.

The record contradicts Lucio's claim that if the jury found her statement not to be credible, "the prosecution would have had no basis upon which to ask the jury to conclude that Lucio caused Mariah's death through a pattern of abuse," Br. 36-37. Even if the jury found Lucio's recorded statement to be incredible, that would have left the jury with Lucio's statement to her sister—"This was me. I did it," ROA.14991; Lucio's demonstration of how she had abused Mariah, ROA.8220-31; ROA.14958; and testimony from the State's experts that Mariah's head injury was inconsistent with an accidental fall, ROA.15095. Because nothing in either expert's testimony undermined that evidence, Lucio cannot show that their absence from the guilt-innocence phase had a substantial and injurious effect on the verdict.

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Kyle D. Hawkins
Solicitor General

/s/ Matthew H. Frederick
Matthew H. Frederick
Deputy Solicitor General
Matthew.Frederick@oag.texas.gov

Ari Cuenin
Assistant Solicitor General
Ari.Cuenin@oag.texas.gov

Counsel for Appellee

## CERTIFICATE OF SERVICE

On March 27, 2020, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,876 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK