No. 16-70027
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

Melissa Elizabeth Lucio,
*Petitioner-Appellant*,

v.

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,
*Respondent-Appellee*.
_____

On Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division, No. 1:13-cv-125
_____

**PETITIONER-APPELLANT'S OPPOSED MOTION TO RECALL MANDATE**

# TABLE OF CONTENTS

Page

BACKGROUND ....................................................................................2

    A.    Trial ........................................................................................2

    B.    Direct Appeal & State Habeas Proceedings ..........................5

    C.    Federal Proceedings ..............................................................6

    D.    Petition for Certiorari .........................................................11

LEGAL STANDARD.........................................................................12

ARGUMENT ......................................................................................13

CONCLUSION AND PRAYER FOR RELIEF ...................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aoude v. Mobil Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989) ................................................................ 15

*Brandon v. Interfirst Corp.*,
  858 F.2d 266 (5th Cir. 1988) ................................................................. 19

*Brecht v. Abrahamson*,
  507 U.S. 619 (1993) ............................................................................. 19

*Burdine v. Johnson*,
  262 F.3d 336 (5th Cir. 2001) ................................................................. 18

*Calderon v. Thompson*,
  523 U.S. 538 (1998) .................................................................. 12, 17, 19

*Caldwell v. Davis*,
  757 F. App'x 336 (5th Cir. 2018) ............................................................. 8

*Chambers v. Mississippi*,
  410 U.S. 284 (1973) ............................................................................ 1, 7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................... 18

*Crane v. Kentucky*,
  476 U.S. 683 (1986) ........................................................................... 5, 11

*Demjanjuk v. Petrovsky*,
  10 F.3d 338 (6th Cir. 1994) ................................................................... 15

*Ex parte Lucio*,
  No. WR-72,702-02, 2013 WL 105179 (Tex. Crim. App. Jan. 9, 2013) ............... 6

*First Nat'l Bank of Louisville v. Lustig*,
  96 F.3d 1554 (5th Cir. 1996) ................................................................. 15

*Glus v. Brooklyn E. Dist. Terminal*,
  359 U.S. 231 (1959) ............................................................................. 19

*Gonzalez v. Crosby*,
    545 U.S. 524 (2005) .......................................................................20

*Goodwin v. Johnson,*
    224 F.3d 450 (5th Cir. 2000) .......................................................12

*Greater Boston Television Corp. v. F.C.C.*,
    463 F.2d 268 (D.C. Cir. 1971) ...................................................15

*H.K. Porter Co. v. Goodyear Tire & Rubber Co.,*
    536 F.2d 1115 (6th Cir. 1976) ....................................................14

*Harrington v. Richter*,
    562 U.S. 86 (2011) .......................................................................20

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*,
    322 U.S. 238 (1944) .....................................................................19

*In re Coastal Plains, Inc.*,
    179 F.3d 197 (5th Cir. 1999) .......................................................19

*In re Ocon*,
    No. 08-11226, 2009 WL 405370 (11th Cir. Feb. 19, 2009) ...............15

*In re Thomas,*
    223 F. App'x 310 (5th Cir. 2007) ...............................................14

*Kittelson v. Dretke*,
    426 F.3d 306 (5th Cir. 2005) ..................................................8, 10

*Konstantinidis v. Chen*,
    626 F.2d 933 (D.C. Cir. 1980) ...................................................19

*Lucio v. Lumpkin*,
    142 S. Ct. 404 (2021) ..................................................................12

*Lucio v. State*,
    351 S.W.3d 878 (Tex. Crim. App. 2011) ......................................5

*Montana v. Egelhoff*,
    518 U.S. 37 (1996) ........................................... 1, 11, 16, 17

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................19

*Sparks v. Duval Cnty. Ranch Co., Inc.*,
604 F.2d 976 (5th Cir. 1979), *aff'd sub nom. Dennis v. Sparks*, 449 U.S.
24 (1980) ...................................................................12

*Teague v. Lane*,
489 U.S. 288 (1989) ...................................................................16

*Trade-Winds Env't Restoration, Inc. v. Stewart Dev., Ltd. Liab. Co.*,
409 F. App'x 805 (5th Cir. 2011) ...................................................14

*U.S. ex rel. Holmes v. Northrop Grumman Corp.*,
642 F. App'x 373 (5th Cir. 2016) ...................................................14

*United States v. City of Jackson, Miss.*,
359 F.3d 727 (5th Cir. 2004)................................................... 13, 14

*United States v. Emeary*,
794 F.3d 526 (5th Cir. 2015)...................................................12

*United States v. McCaskey*,
9 F.3d 368 (5th Cir. 1993)...................................................19

*United States v. Shaffer Equip. Co.*,
11 F.3d 450 (4th Cir. 1993)...................................................13

*United States v. Tolliver*,
116 F.3d 120 (5th Cir. 1997)...................................................1, 12

*Wright v. West*,
505 U.S. 277 (1992)...................................................20

**Statutes**

Tex. Penal Code § 19.02(b)(1)...................................................2

Tex. Penal Code § 19.03(a)(8)...................................................2

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Other Authorities**

12 *Moore's Federal Practice,* § 60.21[4][a] (3d ed. 2009) .....................................15

7 *Moore's Federal Practice* § 60.33 (2d ed. 1978) .................................................15

ABA Model Rule 3.3(a)...........................................................................................13

ABA Model Rule 4.1(a)...........................................................................................13

ABA Model Rule 8.4(c)...........................................................................................13

Restatement (Second) of Judgments § 70 cmt. b (1982) .........................................19

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3938 (3d ed.) ..............................12

A Texas trial court denied Melissa Lucio the opportunity to present testimony from a psychologist who could have cast doubt on the credibility of Ms. Lucio's confession. Although that "key evidentiary ruling" presented this Court with a "difficult issue," App.37a (Southwick, J., concurring), the *en banc* Court narrowly denied habeas relief on a ground offered by the State: that the Supreme Court "has never applied its complete-defense cases to discretionary evidentiary decisions under rules that are themselves constitutional." App.24a (plurality); App.39a (concurrence) (Supreme Court's "caselaw … does not apply to a simple, discretionary, even if errant, evidentiary decision by a state-court judge").

That was wrong, as *the State itself* told the Supreme Court when urging it not to bother correcting the *en banc* Court's error. In the State's own words, "*Chambers* [*v. Mississippi*, 410 U.S. 284 (1973)] squarely discussed the application of state hearsay rules" that are discretionary and constitutional, and Supreme Court precedent "illustrates that 'erroneous evidentiary rulings can, *in combination*, rise to the level of a due process violation,'" Tex. Br. Opp. Cert. ("BIO") 12, 15 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996)).

The State's about-face in the Supreme Court directly contradicted the position it urged this Court to adopt, and its opportunistic repudiation of that reasoning undermines the integrity of the *en banc* proceedings. This Court has the power to "recall [its] mandate if necessary in order to prevent injustice." *United States v.*

*Tolliver*, 116 F.3d 120, 123 (5th Cir. 1997). The State's reversal here manifestly led to an injustice: Ms. Lucio's jury did not hear critical evidence corroborating her innocence, and Ms. Lucio faces execution because of a trial error that should be corrected under well-settled law, as the panel originally concluded. The Court should recall the mandate and reconsider this appeal—now, with the benefit of the State's new-found recognition of binding Supreme Court precedent.

## BACKGROUND

The Court is familiar with this case; the following context is provided for the Court's convenience.

### A. Trial

The State charged Ms. Lucio with capital murder, *see* Tex. Penal Code §§ 19.02(b)(1), 19.03(a)(8), for "intentionally and knowingly" causing Mariah's death by "striking, shaking, or throwing [Mariah] with [her] hand or foot or other object." ROA.7664. The prosecution's slender case centered on statements made during Ms. Lucio's interrogation, which lasted upwards of five hours, as well as her demeanor and body language the night Mariah died. *See*, *e.g.*, ROA.4782. (replaying portions of interrogation during closing, characterizing it as a "confession" to murder); ROA.4409-11 (Texas Ranger testifying he knew Lucio was "hiding the truth" when she said others harmed Mariah); ROA.4227 (police officer testifying Lucio had "no emotion" and appeared "relieved"). Ms. Lucio sought to present

two expert witnesses—social worker Norma Villanueva and psychologist Jonathan Pinkerman—to testify that her demeanor and her incriminating statements during the interrogation reflected her acquiescence to authority figures, not guilt.

The prosecution objected to Villanueva on several grounds, including expertise. ROA.4687. Voir dire established that Villanueva was a licensed social worker with graduate-level education who possessed "the highest national clinical license to allow [her] to do diagnosis and treatment of mental health disorders." ROA.4692-93. Her training and credentials qualified her to assess non-verbal communication. ROA.4693, ROA.4697-98.[1] In Villanueva's clinical judgment, Ms. Lucio acquiesced to male authority figures because of her history of being abused by her stepfather and husbands and other factors, and her interactions with CPS about her children, ROA.4685-86, ROA.4706-07. The defense proffered her testimony to explain why Ms. Lucio "would have given police officer's [sic] information … that was not correct," ROA.4691, and "admit[] to things that she didn't do," ROA.4687. The trial court excluded Villanueva's testimony on the ground that she was not qualified on the issue of "whether or not the statement was true or not true," ROA.4700, even though Villanueva had assured the court she would not opine on that issue.

---

[1] Villanueva's curriculum vitae evidences a lengthy history of specialized training. ROA.5433-39.

After the court told defense counsel that "a psychologist … may or may not be appropriate," ROA.4691, the defense presented Dr. Pinkerman, a Ph.D. in psychology, to testify regarding Ms. Lucio's psychological functioning. Dr. Pinkerman "reviewed all of the available records" from CPS; the videotapes of the interrogation, autopsy photos, and other evidence; and met with Ms. Lucio multiple times to obtain her social history and conduct testing. ROA.8975; ROA.4759-60. He concluded that Ms. Lucio's demeanor during the interrogation could be understood in view of her psychological functioning and previous history and background that she has lived through. ROA.8975-77.

Dr. Pinkerman would have countered the State's evidence with testimony that Ms. Lucio was a "battered woman," ROA.4751, ROA.4752, who "takes blame for everything that goes on in the family," ROA.4751. But the trial court deemed Dr. Pinkerman's testimony irrelevant. Although the prosecution characterized Ms. Lucio's custodial statements as a confession to the murder of her daughter and relied heavily on those statements to secure her conviction, the court said it had "a hard time figuring out how" testimony that cast doubt on Ms. Lucio's incriminating statement "goes to [the issue of] guilt or innocence." ROA.4752. The judge left the bench before defense counsel even put Dr. Pinkerman's proffer on the record. ROA.4757-58.

Defense counsel's closing argument attempted to explain Ms. Lucio's statements as an admission of abuse and neglect but not murder, ROA.4789, made as products of a coercive and un-counseled interrogation, ROA.4798. During deliberations, the jury asked to see the interrogation video "in its entirety," ROA.4823, before finding Ms. Lucio guilty of capital murder. Ms. Lucio was subsequently sentenced to death. ROA.8093, 8097-98.

## B. Direct Appeal & State Habeas Proceedings

On direct appeal, Ms. Lucio argued that the trial court erroneously excluded Villanueva's and Dr. Pinkerman's proposed testimony at the guilt phase because their testimony was relevant to the voluntariness of Ms. Lucio's custodial statements. *See Lucio v. State*, 351 S.W.3d 878, 898 (Tex. Crim. App. 2011). The CCA held that these arguments were not preserved, and, in the alternative, that any error was harmless because the evidence was not relevant. *See id.* at 900, 902.

Ms. Lucio then initiated state habeas proceedings, asserting that the "trial court deprived [her] of the constitutional right to present a complete defense when it excluded the testimony of defense experts during the guilt/innocence phase of trial." ROA.8029.[2] She explained that Villanueva and Pinkerman were "relevant to attack the credibility of the State's case by demonstrating that Melissa did not

---

[2] She acknowledged that the habeas claim, like the claims raised on appeal, relied upon *Crane v. Kentucky*, 476 U.S. 683 (1986), but distinguished the habeas claim, which went "to the core of the case—whether [she] was likely to have engaged in ongoing abuse of Mariah," from the appellate claim, which specifically related to "the circumstances under which her confession was taken." ROA.8029 n.36.

have the propensity to commit the violence against Mariah typically expected of someone who had actually killed their child." ROA.8034.

The State wholly ignored Ms. Lucio's constitutional complete-defense claim, relying exclusively on state law to argue that the trial court's reasoning was consistent with doctrine governing expert testimony. ROA.10028-31. And the State's proposed findings of fact and conclusions of law—which the trial judge adopted in full—perpetuated that error, failing to address the complete defense claim and instead asserting that "[the court] did not abuse its discretion in excluding the testimony of Norma Villanueva and Dr. John Pinkerman." ROA.10095. The CCA "adopt[ed] the trial judge's findings and conclusions." *Ex parte Lucio*, No. WR-72,702-02, 2013 WL 105179, at *1 (Tex. Crim. App. Jan. 9, 2013).

## C. Federal Proceedings

Ms. Lucio filed a federal habeas petition, explaining that the trial court's exclusion of Ms. Villanueva and Dr. Pinkerman violated her constitutional right to present a complete defense under clearly established Supreme Court law, including *Crane* and *Chambers*, ROA.157-161. The State conceded exhaustion. ROA.374. The State moved for summary judgment, seeking to distinguish between circumstances in which an arbitrary "*evidentiary rule* kept the evidence out," ROA.376—which would support a cognizable complete-defense claim—and circumstances where a defendant "challenges … not the rule, but the trial court's application of

it," which the State claimed was merely a state-law evidentiary claim. ROA.377. The district court accepted the State's distinction, concluding that "Lucio's attempt to dress up this state evidence claim as a constitutional claim [wa]s unconvincing." App. 150a.

Following briefing in which the State again asserted this purported rule-versus-application distinction, *see* Opp. to Supp. App. for Cert. of Appealability at 41 ("Denial-of-complete-defense claims require the application of an arbitrary rule"), a panel of this Court granted a certificate of appealability on "whether the exclusion of [Ms. Lucio's] proffered experts on the credibility of her confession violated her constitutional right to present a complete defense." App.104a.

Before the merits panel, Ms. Lucio explained again that "[t]he state court's arbitrary and disproportionate application of state evidentiary rules to exclude critical evidence supporting Ms. Lucio's innocence violated her due process rights," Lucio Fifth Cir. Br. at 2, and that the State's purported distinction—between an exclusionary rule that would categorically preclude all defendants from presenting certain evidence, and the trial court's specific ruling here—was not supported by precedent. As Ms. Lucio explained, "the exclusion of 'critical,' 'trustworthy' evidence 'directly affecting the ascertainment of guilt' based on 'mechanistic[]' application of an otherwise valid rule of evidence violates a defendant's due process rights," *id.* at 18 (quoting *Chambers*, 410 U.S. at 302), regardless of whether the

underlying rule of evidence is itself arbitrary. In opposition, the State repeated its contention that because "[t]his case does not involve an 'arbitrary' or 'disproportionate' rule of evidence," State Fifth Cir. Br. at 20, Ms. Lucio could not demonstrate that the state habeas court misapplied clearly established federal law.

The panel agreed with Ms. Lucio that "excluding [Dr.] Pinkerman's testimony deprived her of the right to present a complete defense," making it "impossible for her to meaningfully dispute the importance and meaning of the videotaped interview." App.83a.[3] It rejected the State's rule-versus-application distinction, noting that "[t]hough the Supreme Court's case law has 'typically focus[ed] on categorical prohibitions of certain evidence,' [this Court has] at least once held that a state court's application of a discretionary evidentiary rule violated a defendant's right to present a complete defense." App.83a-84a (quoting *Caldwell v. Davis*, 757 F. App'x 336, 339 (5th Cir. 2018) (per curiam), and citing *Kittelson v. Dretke*, 426 F.3d 306, 321 (5th Cir. 2005) (per curiam)). The panel reversed the district court's order and remanded with instructions to grant Ms. Lucio relief. App.89a.

Thereafter, this Court granted the State's petition for rehearing *en banc*. App.69a. The State argued, *inter alia*, that "the Supreme Court has never interpreted the right to present a complete defense to require state courts to exercise

---

[3] The panel therefore held that it "d[id] not need to examine whether excluding Villanueva's testimony was also a violation of her constitutional rights," App.83, but noted that "[a]t the very least, the exclusion of Villanueva's testimony raises concerns about the fairness of the trial," App.83 n.1.

their discretion in a particular way; its complete-defense cases have all involved nondiscretionary rules that categorically exclude certain evidence."  State Supp. Br. on Reh'g at 38; *see also id.* at 40 ("Lucio's defense was not 'disabled' … by the exclusion of her expert witnesses because—unlike the categorical rules in *Crane* and *Chambers*—the trial court's ruling did not prevent her from introducing any factual evidence.").

The seventeen-judge *en banc* Court issued a sharply fractured decision. Seven judges joined a plurality opinion and announced the judgment affirming the district court's denial of Ms. Lucio's habeas petition.  App.6a-37a.  Adopting the State's argument, the plurality concluded that "[t]he Supreme Court has *never applied* its complete-defense cases to discretionary evidentiary decisions under rules that are themselves constitutional, like the rules of evidence involving the admissibility of expert opinions here."  App.24a (plurality opinion) (emphasis added). Recognizing that the issue was a "difficult" one, App.37a (Southwick, J., concurring), Judge Southwick authored a concurring opinion, joined by Judges Costa and Willett, concurring in the judgment on narrower grounds; namely, that there is "no Supreme Court opinion holding that an error in the discretionary application of a general evidentiary standard is a constitutional violation."  App.37a-40a.  Both the plurality and concurrence accepted the State's contention that Ms. Lucio's "proposed 'federal complete-defense test' defines the relevant clearly established law at

an impermissibly high level of generality." State Supp. Br. on Reh'g at 27; App. 24a & 33a-34a (plurality); *id.* 39a (concurrence).

Seven dissenting judges, by contrast, identified clearly-established law that the state court violated by failing to allow Ms. Lucio to present a complete defense. *See* App.43a (Higginbotham, J., dissenting) (explaining that "[t]he jury was entitled to hear her defense that it was not Melissa who struck the blow" that killed Mariah under *Crane*); App.46a (Elrod, J., dissenting) ("In my judgment, the state court flouted *Crane* when it rejected Lucio's complete-defense claim by excluding Dr. Pinkerman's testimony as having no relevance to the question of [Lucio's] guilt or innocence." (internal quotation marks omitted)); App.48a (Haynes, J., dissenting) ("I conclude that the state habeas court's adjudication of Lucio's complete defense claim with regard to expert witness Pinkerman involved an unreasonable application of [*Crane*] and [*Chambers*]"); App.66a-67a (Higginson, J., dissenting) (under *Crane*, "the trial judge applied an indefensible 'blanket exclusion' of Pinkerman's testimony by deeming it irrelevant without providing any 'rational justification' for its exclusion" (internal citation omitted)). As Judge Haynes noted, this Court had previously held that a court's improper application of a discretionary rule could constitute a violation of the Supreme Court's complete-defense precedent. *See* App.65a (citing *Kittelson*, 426 F.3d at 310, 319-21).

**D.  Petition for Certiorari**

Ms. Lucio petitioned for certiorari, asking the United States Supreme Court to address this Court's error in holding that the clearly established complete-defense right is limited to categorical evidentiary rules.  *See* Pet. (i)-(ii).  Ms. Lucio argued that the purported distinction of arbitrary and disproportionate *applications* of a general evidentiary standard—urged by the State and adopted by the plurality and concurring opinions of this *en banc* Court—is not grounded in Supreme Court precedent, and that only one other circuit besides this Court (the Ninth) has applied it.  *See* Pet. 21-34.

The State's brief in opposition disclaimed its prior position that the Supreme Court's complete-defense cases have all involved nondiscretionary rules that categorically exclude certain evidence.  Rather, the State acknowledged that "*Chambers* squarely discussed the *application of* state hearsay rules," BIO 12 (emphasis added), that are both discretionary and constitutional, and that the Supreme Court's precedent "illustrates that 'erroneous evidentiary rulings can, *in combination*, rise to the level of a due process violation,'" BIO 15 (quoting *Egelhoff*, 518 U.S. at 53). To persuade the Supreme Court that no circuit split required its attention, the State argued that neither this Court nor the Ninth Circuit "foreclose[s] relief premised on applications of general evidentiary standards," and instead enforce the "general principle" clearly established by the Supreme Court's cases that "[d]ue process

generally protects a 'meaningful opportunity to present a complete defense,'" BIO 10 (quoting *Crane*, 476 U.S. at 690). In the State's new telling, because all "[l]ower courts" apply that general principle to discretionary rulings on valid evidentiary rules in ways that are "necessarily fact-specific," *id.*, Ms. Lucio's bid for certiorari was merely "a request for error correction," *id.* at 16.

The Supreme Court denied the petition. *See Lucio v. Lumpkin*, 142 S. Ct. 404 (2021).

## LEGAL STANDARD

"The Supreme Court has recognized that courts of appeals have an inherent power to recall their mandates[.]" *Goodwin v. Johnson,* 224 F.3d 450, 459 (5th Cir. 2000) (citing *Calderon v. Thompson,* 523 U.S. 538, 549 (1998)). Accordingly, this Court's "authority to recall [its] own mandate is clear." *Tolliver*, 116 F.3d at 123; *accord Sparks v. Duval Cnty. Ranch Co., Inc.*, 604 F.2d 976, 979 (5th Cir. 1979) (recognizing that "power to recall and reform a mandate even after issuance is, though not specifically provided for in the rules, well established"), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24 (1980); Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3938 (3d ed.) ("The power of a court of appeals to recall its mandate once issued has long been recognized.").

"Under Rule 41.2 of the Fifth Circuit Rules," this Court "may recall [its] mandate if necessary in order to prevent injustice." *Tolliver*, 116 F.3d at 123; *ac-*

*cord United States v. Emeary*, 794 F.3d 526, 527-28 (5th Cir. 2015) (Dennis, J., in chambers) (recalling mandate where defendant's "appointed attorney and this court both committed plain error in reviewing [defendant's] sentence").

## ARGUMENT

The State's belated acknowledgment that erroneous evidentiary *rulings* can violate due process under clearly established Supreme Court precedent calls into question the integrity of this Court's *en banc* decision. Allowing a capital conviction to stand—now, with an imminent execution date—based on arguments the State was unwilling to defend before the Supreme Court would be an injustice.

All attorneys have a "general duty of candor and good faith … to protect the integrity of the entire judicial process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458 (4th Cir. 1993). This duty is not merely a matter of professional responsibility or local rule[4]—rather, it is foundational to the entire premise of our judicial system:

> Our adversary system … depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. *Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process.* As soon as the process falters in that respect, the people are then justified in

---

[4] *See* ABA Model Rule 3.3(a) ("A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); *see also* ABA Model Rules 4.1(a), 8.4(c).

abandoning support for the system in favor of one where honesty is preeminent.

*Id.* at 457 (emphasis added); *see also United States v. City of Jackson, Miss.*, 359 F.3d 727, 732 n.9 (5th Cir. 2004) (citing *Shaffer* with approval). As this Court has recognized, an attorney violates this duty of candor where they fail to cite relevant judicial authority, *see Trade-Winds Env't Restoration, Inc. v. Stewart Dev., Ltd. Liab. Co.*, 409 F. App'x 805, 808 n.3 (5th Cir. 2011), or to mention a "critical aspect of the case," *City of Jackson, Miss.*, 359 F.3d at 732 n.9.

Perhaps most relevant here, this Court has held that making misrepresentations to the court in an attempt to manipulate the judicial process amounts to a violation of this duty. *See U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 377-78 & n.6 (5th Cir. 2016) (violation of duty of candor where FCA relator made misrepresentations to gain access to documents in one suit to use in another, in violation of protective order); *In re Thomas,* 223 F. App'x 310, 314-15 (5th Cir. 2007) (violation of duty of candor where individual "signed documents containing intentional misrepresentations in an attempt to abuse the bankruptcy process"). In light of the duty of candor and its bedrock role in protecting the integrity of judicial proceedings, such misrepresentations may amount to fraud on the court: "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1119 (6th Cir. 1976).

Of course, the concept of fraud on the court does not cover any and every misrepresentation related to the presentation of a case. Instead, one widely-accepted definition of fraud on the court "embrace[s] only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Demjanjuk v. Petrovsky,* 10 F.3d 338, 352 (6th Cir. 1994) (quoting 7 *Moore's Federal Practice* § 60.33 (2d ed. 1978)) (now at 12 *Moore's Federal Practice,* § 60.21[4][a] (3d ed. 2009)). Consistent with this definition, this Court has explained that "[t]o establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1573 (5th Cir. 1996) (internal quotation marks omitted). Other circuits have offered similar formulations.[5] Each definition emphasizes that fraud occurs where a party intentionally interferes with

---

[5] *See, e.g., In re Ocon*, No. 08-11226, 2009 WL 405370, at *1 (11th Cir. Feb. 19, 2009) (per curiam) ("A party commits a fraud on the court when the falsehood mires the 'judicial machinery' such that it cannot perform in the usual manner its impartial task of adjudging cases." (quotation omitted)); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter…"); *Greater Boston Television Corp. v. F.C.C.*, 463 F.2d 268, 278 (D.C. Cir. 1971) ("The spirit of the 'fraud on the court' rule is applicable whenever the integrity of the judicial process or functioning has been undercut—certainly in any instance, of misconduct by a party.").

the operation of the judicial process; the common thread is an attempt to undercut the integrity of judicial proceedings.

That is precisely what occurred here. To secure reversal of the unpublished panel decision ruling in Ms. Lucio's favor, the State insistently and repeatedly claimed that the panel's decision created a new rule in violation of *Teague v. Lane*, 489 U.S. 288 (1989), and that Supreme Court's complete-defense cases have all involved nondiscretionary rules that categorically exclude certain evidence.[6] But the State made a U-turn in the Supreme Court. Unable to defend the indefensible to the Court that rendered the precedent at issue, it conceded that the complete-defense rule is a clearly established "general principle" that must be applied in ways that are "necessarily fact-specific," including cases that involve discretionary applications of non-arbitrary, otherwise valid rules of evidence.[7]

Both the plurality and the concurrence had rejected Ms. Lucio's claim on the basis that there was no such Supreme Court precedent. This Court concluded that

---

[6] *See, e.g.*, ROA.376-77 (before district court, distinguishing between arbitrary evidentiary rules and circumstances where a defendant "challenges … not the rule, but the trial court's application of it"); Opp. to Supp. App. for Cert. of Appealability at 41 ("Denial-of-complete-defense claims require the application of an arbitrary rule"); State Fifth Cir. Br. at 19 (arguing that Ms. Lucio did not have a complete-defense claim because "[t]his case does not involve an 'arbitrary' or 'disproportionate' rule of evidence"); State Supp. Br. on Reh'g at 38 (arguing that the Supreme Court's "complete-defense cases have all involved nondiscretionary rules that categorically exclude certain evidence").

[7] BIO 10 (asserting that neither this Court nor the Ninth Circuit "foreclose[s] relief premised on applications of general evidentiary standards"); *id.* at 12 (acknowledging that "*Chambers* squarely discussed the application of state hearsay rules"); *id.* at 15 (acknowledging that Supreme Court precedent "illustrates that 'erroneous evidentiary rulings can, *in combination*, rise to the level of a due process violation" (quoting *Egeloff*, 518 U.S. at 53)).

Ms. Lucio "fail[ed] to show that Texas courts *categorically* prohibited evidence undermining her inculpatory statements." App.20a (plurality); *accord* App.40a (Southwick, J., concurring). As the State recognized before the Supreme Court, however, Ms. Lucio did not have to make such a showing to establish a violation of her right to present a complete defense. *See, e.g.*, BIO at 15 (acknowledging that Supreme Court precedent "illustrates that 'erroneous evidentiary rulings can, *in combination*, rise to the level of a due process violation'" (quoting *Egelhoff*, 518 U.S. at 53)). Those acknowledgements directly contradict both the concurrence and plurality opinions from this Court on the issue the concurrence viewed as "outcome-determinative." App.38a; App.40a (concurrence erroneously stating *Chambers* only "concerned a bar to any evidence that ran afoul of the common-law voucher rule"); App.23a (plurality purporting to "explain the Supreme Court's decision in *Chambers*" by mentioning only the voucher rule, and not hearsay).[8] While the plurality and concurrence both found it critical that "[t]he Supreme Court has never applied its complete-defense cases to discretionary evidentiary decisions under rules that are themselves constitutional," App.24a (plurality); *see also* App.39a-40a (Southwick, J., concurring), the State acknowledged before the Supreme Court that this conclusion was not correct. *See supra* n.7.

---

[8] *See also* App.35a (plurality calling it "troubling to interpret *Montana v. Egelhoff* as extending *Crane* from blanket exclusions to discretionary ones").

This sort of litigation bait-and-switch fundamentally undermines the integrity of judicial proceedings, "calling into question the very legitimacy of the judgment," *Thompson*, 523 U.S. at 557.[9]   That is particularly so here because the State's about-face did not concern some tangential legal issue, but rather went to the outcome-determinative issue before this Court: whether the "exclusion of testimony that might have cast doubt on the credibility of [Ms.] Lucio's confession," which "was the key evidentiary ruling at trial," App.37a (Southwick, J., concurring), violated Ms. Lucio's right to present a complete defense.  This Court should have the opportunity to reconsider the critical legal issue raised in Ms. Lucio's petition with the benefit of the legal argument adopted by the State in the Supreme Court—which disclaims the reasoning adopted in the *en banc* decision.

Because the State's shifting position on the central issue before this Court has called into question the integrity of the proceedings, recall of the mandate is

---

[9] The State employed the same bait-and-switch to obtain *en banc* review:  its argument before the Supreme Court reveals that it misrepresented the law in its petition for rehearing.  In spite of this Court's warning that unwarranted petitions for rehearing are an advocate's "most abused prerogative," 5th Cir. I.O.P. 35-4, the State took advantage of the *en banc* process, falsely arguing that the panel decision contravened circuit precedent.  In fact, the panel's decision was entirely consistent with *Kittelson*, and with Supreme Court precedent, as the State has now conceded.  In opposing certiorari, the State framed the Supreme Court's complete-defense cases at precisely the same level of generality as Judge Haynes's dissent, *see* App.65a (Haynes, J., dissenting), and in direct contradiction to the plurality and concurrence.   The State's acknowledgment that *Crane* and *Chambers* establish a "general principle" that lower courts must apply in "necessarily fact-specific" ways, BIO 10, directly contradicts the argument it made for rehearing *en banc* based on *Teague*.  *See Burdine v. Johnson*, 262 F.3d 336, 342-343 (5th Cir. 2001) (en banc) ("[T]he application of established general procedural principles in an analogous context is not a new rule barred by *Teague*.").

warranted.  As the Supreme Court has said, the "'historic power of equity to set aside fraudulently begotten judgments' is necessary to the integrity of the courts, for 'tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public.'"  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245-46 (1944)).  "'[P]rotect[ing] the integrity of the judicial process'" requires a bar on parties "'playing fast and loose with the courts to suit the exigencies of self interest.'"  *In re Coastal Plains, Inc.* 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).  When a party "'deliberately chang[es] positions according to the exigencies of the moment,'" thereby making "'improper use of judicial machinery,'" courts have discretion to invoke equity and prevent the public perception that they were misled.  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993), and *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), respectively).  This Court should do so here.

Any argument invoking finality, moreover, simply rings hollow.  First, "[w]hen a judgment is shown to have been procured by the prevailing party through corruption of the tribunal … no worthwhile interest is served in protecting the judgment."  Restatement (Second) of Judgments § 70 cmt. b (1982).  Second,

limitations imposed out of "respect for 'the State's interest in the finality of convictions that have survived direct review within the state court system,'" *Thompson*, 523 U.S. at 555 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)), have no place where the State itself corrupted the judgment it seeks to make final. *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 233-34 (1959). The principle of finality in habeas law serves as a shield for good-faith applications of existing precedent. *See Wright v. West*, 505 U.S. 277, 291 n.8 (1992) (Thomas, J.); *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quoting *Thompson*, 523 U.S. at 555-56). Here, Texas wielded misrepresentations of the Supreme Court's complete-defense cases as a sword against the finality of the panel's decision—after making those same misrepresentations to the district court, and urging the state courts not to apply those complete-defense cases, but to ignore them.

Finally, any argument that 28 U.S.C. § 2244 poses an obstacle to Ms. Lucio's motion would be misguided. The Supreme Court has indicated that the requirements of Section 2244 are not applicable in motions to recall the mandate "calling into question the very legitimacy of the judgment." *Thompson*, 523 U.S. at 557. This conclusion follows *a fortiori* from the Supreme Court's holding that "when a Rule 60(b) motion attacks[] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," Section 2244 is not applicable. *Gonzalez v. Crosby*, 545 U.S. 524,

532 (2005).  The United States itself advocated this interpretation, explaining that "in the wake of AEDPA, relief should remain available for Rule 60(b) motions that attack a fundamental irregularity in the procurement or integrity of the initial habeas judgment."  U.S. Br., *Gonzalez v. Crosby*, No. 04-6432, 2005 WL 760331, *26 (Apr. 1, 2005).  Because the State's gamesmanship as to the central legal issue in this case operated to undercut the integrity of the judicial process, Section 2244 is inapplicable here.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Petitioner-Appellant's Motion to Recall the Mandate should be granted.

March 14, 2022

A. RICHARD ELLIS
Attorney at Law
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
a.r.ellis@att.net

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
TIVON SCHARDL
Chief, Capital Habeas Unit
TIMOTHY GUMKOWSKI
Assistant Federal Public Defender
919 Congress Ave., Ste. 950
Austin, Texas 78701

*Counsel for Petitioner-Appellant*
*Melissa Elizabeth Lucio*

### *Certificate of Compliance*

This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) and the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,107 words.

This document complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 font in Times New Roman.

/s/ Tivon Schardl
Tivon Schardl
*Counsel for Petitioner-*
*Appellant Melissa Lucio*

Dated: <u>March 14, 2022</u>

## *Certificate of Conference*

I certify that on March 10, 2022, counsel for Petitioner-Appellant notified Assistant Solicitor General Ari Cuenin, counsel for Respondent-Appellee, that Ms. Lucio would be filing this motion. Counsel indicated that Respondent-Appellee is opposed to this motion.


/s/ Tivon Schardl
Tivon Schardl

***Certificate of Service***

I hereby certify that on March 14, 2022, I electronically filed the foregoing document with the clerk of court for the Fifth Circuit Court of Appeals using the electronic case filing system of the Court, which will send a "Notice of Electronic Filing" to counsel for Respondent-Appellee at the e-mail addresses listed on the docket.

/s/ Tivon Schardl
Tivon Schardl